Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
Mayra de Aguiar (Bar No. 212709)
mdeaguiar@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Kenton Skarin (application for admission *pro hac vice* pending)
kskarin@x.ai
Reid Coleman (application for admission *pro hac vice* forthcoming)
rcoleman@x.ai
SPACEXAI LLC
800 W. Cesar Chavez
Austin, TX 78701

*Attorneys for Defendant SpaceXAI LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BUIST, CHEYENNE HUNT, CHRISTINE BULLOCK, and NICK SPETSAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC, PBC; OPENAI OPCO, LLC; SPACEXAI LLC; and GOOGLE LLC,<br><br>Defendants. | Case No.: 5:26-cv-10693-NC<br><br>**DEFENDANT SPACEXAI LLC'S NOTICE OF MOTION AND MOTION TO SEVER AND TRANSFER TO THE NORTHERN DISTRICT OF TEXAS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>*Filed concurrently with Declaration of Megan Scolari and [Proposed] Order*<br><br>Date: November 18, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Nathanael M. Cousins |

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. Plaintiffs Buist and Spetsas agreed to the SpaceXAI Consumer Terms of Service, including its forum-selection clause. .......... 3

B. Plaintiff Hunt agreed to the X Terms of Service, including its forum-selection clause. .......... 6

C. Notwithstanding the forum-selection clause, Plaintiffs sued SpaceXAI in the Northern District of California. .......... 8

III. LEGAL STANDARD .......... 9

IV. ARGUMENT .......... 10

A. The forum selection clauses to which Plaintiffs agreed are valid and cover the claims in this action. .......... 10

1. Plaintiffs agreed to the Terms of Service. .......... 11

2. Plaintiffs' claims fall within the scope of the forum-selection clauses in the Terms of Service. .......... 18

3. Plaintiffs cannot rebut the presumption that the forum-selection clauses are enforceable. .......... 19

B. The Court should sever the claims against SpaceXAI and transfer them to the Northern District of Texas. .......... 21

C. Alternatively, the Court should compel arbitration. .......... 22

V. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49 (2013) .......... 9, 19, 21

*Baxter Bailey & Assocs., Inc. v. Niagara Bottling, LLC*, No. 2:24-cv-02394-AB-BFM, 2025 WL 1543602 (C.D. Cal. May 5, 2025) .......... 10

*Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528 (9th Cir. 2003) .......... 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 23

*Doe v. X Corp.*, No. 25-cv-07597-TLT, 2025 WL 3500543 (N.D. Cal. Nov. 6, 2025) .......... 17, 22

*Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) .......... 20

*Eliza Labs, Inc. v. X Corp.*, No. 25-cv-07243-AMO, 2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) .......... 14, 17, 19, 22

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 11

*Hernandez v. WM Wholesale, LLC*, No. 8:24-cv-02553-JVS-JDE, 2025 WL 21551105 (C.D. Cal. Mar. 28, 2025) .......... 14

*Javier v. Assurance IQ, LLC*, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 17

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024) .......... 16, 17

*LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199 (C.D. Cal. 2015) .......... 20

*Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490 (1992) .......... 20

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .......... 20

*Mohamed v. Uber Tech., Inc.*, 848 F.3d 1201 (9th Cir. 2016) .......... 20

*Monje v. Spin Master Inc.*, No. CV–09–1713–PHX–GMS, 2013 WL 6498073 (D. Ariz. Dec. 11, 2013) .......... 10, 22

*Moretti v. Hertz Corp.*, No. C 13–02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .......... 14

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 11

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 11

*Paduano v. Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) .......... 10, 22

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 11, 17

*Rostami v. Hypernet Inc.*,
No. 22-cv-01813-EJD, 2023 WL 2717262 (N.D. Cal. Mar. 29, 2023) .......... 20

*Rowen v. Soundview Commc'ns, Inc.*,
2015 WL 899294 (N.D. Cal. Mar. 2, 2015) .......... 20

*Skaggs v. X.AI, LLC*,
No. 26-cv-04550-BLF, 2026 WL 2352969 (N.D. Cal. Aug. 13, 2026) .......... 18

*St. Clair v. X.AI Holdings Corp.*,
No. 26-cv-00386-ALC, 2026 WL 1803744 (S.D.N.Y. June 23, 2026) .......... 17, 22

*Sun v. Adv. China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 11, 19, 20, 21

*Taddeo-Waite v. X Corp.*,
No. 3:25-CV-00874 (VDO), 2025 WL 3237422 (D. Conn. Nov. 20, 2025) .......... 22

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) .......... 20

*Valspar Corp. v. E.I DuPont de Nemours & Co.*,
15 F. Supp. 3d 928 (D. Minn. 2014) .......... 10

*Williams v. X Corp.*,
No. 1:25-00058-JB-MU, 2025 WL 2801626 (S.D. Ala. Oct. 1, 2025) .......... 22

**Statutes**

15 U.S.C. § 1 .......... 9

28 U.S.C. § 1404(a) .......... 1, 9, 10, 22

**Rules**

Fed. R. Civ. P. 21 .......... 1, 9, 10, 22

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 18, 2026, at 11:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Nathanael M. Cousins of the above-entitled Court, located at 280 South First Street, San Jose, California 95113, Defendant SpaceXAI LLC ("SpaceXAI") will and hereby does move the Court to sever the claims against it and transfer them to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 21. Alternatively, SpaceXAI moves to compel individual arbitration of Plaintiffs' claims against it and to dismiss or stay those claims pending the conclusion of that arbitration. This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Megan Scolari filed concurrently, the pleadings and records on file in this action, and such further argument and evidence as may be presented at the hearing of this motion.

## STATEMENT OF RELIEF SOUGHT

SpaceXAI seeks an order severing Plaintiffs' claims against it and transferring them to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 21. Alternatively, SpaceXAI seeks an order compelling individual arbitration of Plaintiffs Buist and Spetsas' claims against it and dismissing or staying those claims pending the conclusion of that arbitration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Charles Buist, Nick Spetsas, and Cheyenne Hunt—each a licensed attorney—agreed to litigate any dispute related to their use of Grok, operated by SpaceXAI, exclusively in Texas. They sued SpaceXAI in California instead. This court should enforce the parties' agreement and sever and transfer Plaintiffs' claims against SpaceXAI to the forum where they belong.

Terms of service bind users who had either actual or constructive notice of them, so long as the terms cover the subject of the dispute. Each requirement is satisfied here. As to actual notice, Plaintiffs' own complaint admits that SpaceXAI "provides Grok to individual consumers

under its Consumer Terms of Service." Compl. ¶ 28. That judicial admission establishes notice and thus concedes that the terms are binding.

Constructive notice is independently just as strong. Buist and Spetsas, partners in an Orlando law firm, created a firm Grok account in July 2025. Completing the registration for that account required them to proceed past text notifying them that "[b]y continuing, you agree to the Terms of Service," with the Terms hyperlinked in bold contrasting text. Later, on September 11, 2026, they clicked a "Got it" notice acknowledging the amended version of those Terms—seven days before they filed suit. Those Terms provide that all disputes related to the Terms or the Service, including statutory claims arising from use of the Service, "shall be brought and must proceed exclusively" in the federal or state courts located in Tarrant or Wichita County, Texas.

Hunt, also a licensed attorney, is an X Premium+ subscriber who accesses Grok only through X. She has accessed her X account around 500 times in just the past ninety days. She agreed to the X Terms of Service when she created her account, clicked "Got it" on a 2023 update of those Terms, and continued using the platform through the week she sued. Hunt's personal X account is also linked to the user handle for "Reckoning Action," an organization that lists Hunt as its founder and executive director. The Reckoning Action X account clicked "Got it" to accept the two most recent sets of X Terms, on May 15, 2026, and again on September 11, 2026. The X Terms contain the same exclusive Texas forum-selection clause and expressly extend it to SpaceXAI as an intended third-party beneficiary. In short, all three Plaintiffs had constructive notice of relevant versions of the Terms requiring them to assert their claims against SpaceXAI in Texas—not in this court.

Whether notice is actual or constructive, Plaintiffs' claims against SpaceXAI are also covered by the terms they accepted. Their entire theory against SpaceXAI is that Elon Musk's repost of an article by Anthropic CEO Dario Amodei with just three words, "Dario is right," formed an agreement to slow artificial-intelligence development and thereby diminished the value of the paid Grok subscriptions they purchased. Those claims are "related to" the Service and to Plaintiffs' use of it, whatever their dubious underlying merits.

Valid forum-selection clauses are routinely enforced in all but the most exceptional cases.

A party who fails to follow such clauses bears the heavy burden of showing that public-interest factors unrelated to convenience overwhelmingly disfavor transfer. Licensed attorneys who concede that their Grok use was covered by the Terms, who received repeated, conspicuous notice of the Terms, and who clicked to signify their assent, cannot carry that burden. Plaintiffs' claims are purely federal, nothing about them is localized to California, and docket congestion is lower in the Northern District of Texas. The Court should sever the claims against SpaceXAI and transfer them to the Northern District of Texas, where they belong.

## II. BACKGROUND

### A. Plaintiffs Buist and Spetsas agreed to the SpaceXAI Consumer Terms of Service, including its forum-selection clause.

Plaintiffs Buist and Spetsas are partners at the Orlando-based law firm Spetsas Buist Accident Injury Lawyers, PLLC. Declaration of Megan Scolari ("Scolari Decl.") ¶ 16. They have created numerous social media accounts to promote their law firm, including an X account with the handle @SpetsasBuist. *Id.* They created the X account on or around October 4, 2021, and have posted to the account as recently as April 21, 2026. *Id.* The firm's official X account is linked to a Grok account that was created under the name "Charles Buist" on or around July 11, 2025. *Id.* Buist and Spetsas have periodically submitted queries using their shared Grok account since it was created, including as recently as October 3, 2026. *Id.* They upgraded their Grok account to a paid subscription on September 3, 2026. *Id.*

By creating and using their Grok account, Buist and Spetsas repeatedly agreed to the SpaceXAI Consumer Terms of Service. *Id.* ¶¶ 17–18. All users registering for a Grok account must agree to the Terms. To complete the registration process, users must proceed past text informing them that "[b]y continuing, you agree to the Terms of Service and Privacy Policy." *Id.* ¶ 7. An image of the registration presented at the time Buist and Spetsas made their account follows:




In this agreement statement, the phrase "Terms of Service" appeared in bold, white text set against a black background and contained a hyperlink to the then-current Terms. *Id.* ¶ 7. Buist and Spetsas could not have created their account in July 2025 on the Grok iOS app without being presented with the agreement statement. *Id.*

Buist and Spetsas also manifested assent to the SpaceXAI Consumer Terms of Service several other times since creating their account. When SpaceXAI updated those Terms in June and September 2026, SpaceXAI notified them about those updates. *Id.* ¶ 10. The notification prompt appeared as a pop-up message stating: "Updates to our Terms of Service and Acceptable Use Policy." *Id.* The prompt also included a hyperlink in bolded black font to the updated Terms of Service so that users could easily review the amendments. *Id.* ¶ 11. And the users were asked to click a button labeled "Got it," which was served until the user clicked the prompt.




According to SpaceXAI's records, Spetsas and Buist clicked the "Got it" button on September 11, 2026, and thereby acknowledged and indicated their acceptance of the September 1, 2026 version of the Terms. *Id.* ¶ 18.

Since at least June 2025, the SpaceXAI Consumer Terms of Service have included a forum-selection clause designating Texas as the exclusive forum for all claims. Indeed, only a few lines into the September 1, 2026 Terms—which Buist and Spetsas agreed to less than a week before filing this lawsuit—users are put on notice that "any disputes between you and us will be resolved by a court in Tarrant County or Wichita County, Texas, based on Texas law, except that if the forum selection clause in these Terms is unenforceable for any reason, then the dispute will be arbitrated." *Id.* ¶ 9. Reiterating this point later on, the Terms state: "Notwithstanding any other agreement to the contrary,, unless prohibited by your country's applicable law, all disputes related to these Terms, the Services, or any patents . . . shall be brought and must proceed exclusively in the federal or state courts located inWichita County or Tarrant County, Texas, United States, and you and we consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.,." *Id.* ¶ 12. And the Terms further clarify that: "If, for any reason, the forum selection clause . . . is deemed unenforceable as to your dispute, then you and we agree to binding arbitration of the dispute administered by the American Arbitration

Association." *Id.* ¶ 12.

**B. Hunt agreed to the X Terms of Service, including its forum-selection clause.**

Plaintiff Hunt, who is also an attorney, maintains an active presence on X using an account with the handle @CheyenneHuntCA. *Id.* ¶ 30. She created this X account using a web browser on or around January 31, 2020, and has posted to the account regularly and as recently as last week. *Id.*. She is a prolific user who has accessed her account around 500 times in just the past ninety days. *Id.* Hunt is an X Premium+ subscriber, which gives her access to advanced creator tools and, relevant here, a paid SuperGrok subscription. *Id.* ¶ 31. Premium+ users can access the Grok subscription directly in X ("Grok on X") or by creating a Grok account and linking it to their X account. *Id.* According to SpaceXAI's records, there is no Grok account linked to Hunt's X account, which means that she is only accessing Grok through the X application and X.com. *Id.* As a result, her use of Grok is governed by the X Terms of Service rather than the SpaceXAI Consumer Terms of Service. *Id.*

In January 2020, users creating a new account had to proceed past a banner notifying them that "[b]y signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use." *Id.* ¶ 21. The phrase "Terms of Service" prominently appeared as a blue hyperlink that redirected users to the operative Terms. *Id.*



The sign-up screen for X accounts created more recently likewise notifies users that "[b]y signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use." *Id.* ¶ 22 Version 22 of the X Terms of Service provide that X "may revise the Terms from time to time" and that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶24

By creating and using her X account, Hunt agreed to the X Terms of Service. Hunt first manifested assent when she created her account in January 2020 and clicked past the screen notifying her that, "[b]y signing up, you agree to the Terms of Service." *Id.* ¶ 21. In addition, when X amended the Terms of Service in September 2023, the company sent users an in-app prompt that notified users of the changes. *Id.* ¶ 26. The pop-up message notified users that: "We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them." *Id.* A copy of that message follows:



Hunt clicked the "Got it" button in response to the prompt on September 7, 2023, thereby acknowledging and indicating her acceptance of the September 2023 version of the Terms of Service. *Id.* ¶32. And because Hunt continues to use X to this day, she is bound by the latest version of the X Terms of Service. She has therefore repeatedly manifested assent to the X Terms of Service, including the provisions stating that X "may revise the Terms from time to time" and that "[b]y continuing to access or use the Service after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶ 24.

Like the SpaceXAI Consumer Terms of Service, the operative X Terms of Service have a forum-selection clause that makes Texas the exclusive forum for all disputes related to the X services (including Grok on X). Those Terms provide: "Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Service, or any patents . . . shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas, United States, and you and we consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum." *Id.* ¶ 28.

### C. Notwithstanding the forum-selection clause, Plaintiffs sued SpaceXAI in the Northern District of California.

On September 18, 2026, Plaintiffs Buist, Spetsas, and Hunt filed this putative antitrust class action against Anthropic, OpenAI, Google, and SpaceXAI in the Northern District of California.[1] Their claims focus on an essay published by Dario Amodei, Anthropic's Chief Executive Officer, about claimed risks posed to humanity by the rapidly improving capabilities of artificial intelligence models. Compl. ¶¶ 61–70. In the essay, Amodei proposes slowing the pace of artificial intelligence development to allow companies to devote additional resources to testing, evaluation, alignment, and other safety-focused areas. He also acknowledges that certain types of coordination among the frontier artificial intelligence companies would require government mediation or antitrust waivers. *Id.* ¶ 69. The complaint alleges that SpaceXAI,

[1] The fourth named plaintiff, Christine Bullock, asserts no claims against SpaceXAI because she is only alleged to have a paid subscription to Anthropic's Claude. Compl. ¶ 18.

OpenAI, and Google publicly endorsed Amodei's proposal to slow development and thereby entered into an unlawful agreement to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶¶ 71–75. As to SpaceXAI, Plaintiffs' theory for how the company entered the supposed anticompetitive conspiracy rests entirely on the allegation that Elon Musk reposted Amodei's essay with the three-word message "Dario is right." *Id.* ¶ 71. Plaintiffs seek treble damages and injunctive relief on behalf of a proposed nationwide class of persons who purchased paid individual consumer subscriptions to Claude, ChatGPT, Grok, or Gemini on or after September 12, 2026. *Id.* ¶¶ 15, 123.

SpaceXAI now moves to sever the claims against it and transfer them to the Northern District of Texas in accordance with the forum-selection clauses to which Plaintiffs agreed or, in the alternative, to compel arbitration in accordance with the Terms of Service.

## III. <u>LEGAL STANDARD</u>

The Court should transfer the claims against SpaceXAI under 28 U.S.C. § 1404(a) because the Terms of Service that Plaintiffs agreed to mandate exclusive jurisdiction in the Northern District of Texas. Forum-selection clauses "may be enforced by a motion to transfer under § 1404(a), which provides that '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013) (quoting 28 U.S.C. § 1404(a)). "When a defendant files such a motion . . . a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* The party defying the forum-selection clause bears "the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63.

To give effect to the forum-selection clause, as *Atlantic Marine* requires, the Court must sever the claims against SpaceXAI under Federal Rule of Civil Procedure 21. Rule 21 permits courts to sever any claim against a party, and district courts have broad discretion in determining whether severance is appropriate. When a defendant moves to sever in order to enforce a forum-

selection clause, courts typically merge the Rule 21 and § 1404(a) analyses. *See, e.g.*, *Baxter Bailey & Assocs., Inc. v. Niagara Bottling, LLC*, No. 2:24-cv-02394-AB-BFM, 2025 WL 1543602, at *2 (C.D. Cal. May 5, 2025) ("because any severance would be to facilitate transfer under § 1404(a) and because both rules are concerned with the interests of justice, it makes sense to collapse consideration of both procedures into a single analysis under § 1404(a)"); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 431–32 (E.D.N.Y. 2014) ("courts typically consider the same general factors elucidating the § 1404(a) analysis" when considering whether to grant a motion to sever); *Valspar Corp. v. E.I DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 931–32 (D. Minn. 2014) (similar); *Monje v. Spin Master Inc.*, No. CV–09–1713–PHX–GMS, 2013 WL 6498073, at *4 (D. Ariz. Dec. 11, 2013) (explaining that "[s]everance is a necessary precursor to . . . transfer, and it is justified by the same reason[s]").

## IV. ARGUMENT

By registering for Grok and X accounts and using those services, Plaintiffs agreed to bring any claim related to their use of those services in the Northern District of Texas. The Court should hold Plaintiffs to their agreement. The forum-selection clauses are valid and enforceable, and Plaintiffs (all of whom are licensed attorneys) cannot credibly argue otherwise. There is also no question that the forum-selection clauses govern the claims asserted here. And because transfer is appropriate under § 1404(a), severance under Federal Rule of Civil Procedure 21 is warranted as well. But if for any reason the Court concludes that the forum-selection clauses are not enforceable, then the proper course is to compel arbitration in accordance with the Terms of Service.

### A. The forum selection clauses to which Plaintiffs agreed are valid and cover the claims in this action.

The Court should grant SpaceXAI's motion to transfer because Plaintiffs entered into contractually binding agreements to litigate the claims they assert here in the Northern District of Texas. In evaluating a motion to transfer based on a forum-selection clause, the court must begin by determining (1) whether the parties agreed to the clause and, if they did, (2) whether the clause encompasses the dispute at issue. *See, e.g.*, *Sun v. Adv. China Healthcare, Inc.*, 901 F.3d

1081, 1086 (9th Cir. 2018); *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 530 (9th Cir. 2003). SpaceXAI easily satisfies both threshold inquiries.

*1. Plaintiffs agreed to the Terms of Service.*

By creating and using their Grok and X accounts, Plaintiffs agreed to the relevant versions of the SpaceXAI Consumer Terms of Service and the X Terms of Service, including the forum-selection clause. Online agreements are enforceable when they put users on "actual or constructive notice of the agreement" and the users "manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). There are many variations of online agreements, including: (a) clickwrap, "in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed," (b) browsewrap, "in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website," and (c) sign-in wrap, in which a website notifies users of the existence of the website's terms of use and advises them that they are agreeing to those terms when signing up. *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024). Courts will uphold such agreements "where the existence of the terms was reasonably communicated to the user." *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) (citations omitted).

Plaintiffs Buist, Spetsas, and Hunt concede that they had *actual* notice of the SpaceXAI Consumer Terms of Service. Indeed, their complaint acknowledges that SpaceXAI "provides Grok to individual consumers under its Consumer Terms of Service." Compl. ¶ 28. That suffices to establish contract formation. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (explaining that even browsewrap is enforceable "where the user had actual notice of the agreement"). And even if Plaintiffs' own pleadings had not already established actual notice, the Terms of Service are additionally enforceable because Plaintiffs had constructive notice of and manifested assent to them. *See Oberstein*, 60 F.4th at 515 ("an enforceable agreement may be found where (1) the website provides reasonably conspicuous notice of the terms . . . and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously

manifests his or her assent to those terms" (citation modified)).

When Buist and Spetsas created the Grok account for their law firm in July 2025, they acknowledged and agreed to the SpaceXAI Consumer Terms of Service. Scolari Decl. ¶¶ 16–17. The sign-up screen in place at that time displayed a banner, positioned immediately below all sign-up buttons and visible without any scrolling, notifying users that, "[b]y continuing, you agree to the Terms of Service and Privacy Policy." *Id.* ¶ 7. That message was set in white text, which contrasted with the surrounding black background, and contained bold hyperlinks for both "Terms of Service" and "Privacy Policy," as illustrated below:



*Id.* (describing sign-in screen and providing screenshots depicting sign-up page around the time Spetsas and Buist created account).

Buist and Spetsas also affirmatively acknowledged the September 1, 2026 version of SpaceXAI Consumer Terms of Service less than a week before filing this lawsuit. *Id.* ¶ 18. When SpaceXAI alters its Terms of Service, it sends users a pop-up prompt notifying them of the revisions. In black bolded text set against a white background, the notice informed users "Updates to our Terms of Service and Acceptable Use Policy." *Id.* ¶¶ 10–11.




The full text of the Terms of Service is linked immediately below that message in a bold, black font. *Id.* ¶ 11. At the bottom of the prompt, users are asked to acknowledge the changes by clicking a button labeled "Got it." *Id.* On September 11, 2026, Buist and Spetsas clicked the "Got it" message associated with the September 1, 2026 update to the Terms of Service, and thus affirmatively manifested assent to that version. *Id.* ¶ 18.

Hunt likewise had constructive notice of the X Terms of Service, which govern her use of

Grok on X.[2] The sign-in screen that appeared when Hunt created the @CheyenneHuntCA account in January 2020 notified her that, "[b]y signing up, you agree to the Terms of Service and Privacy Policy." *Id.* ¶ 21.




That message appeared immediately above the "Sign up" button that users had to click in order to complete the registration process, and the full text of the Terms of Service was linked in blue text—which set it apart from the surrounding black text and the white background—for easy

[2] It makes no difference that Hunt assented to the X Terms of Service, not the SpaceXAI Terms of Service. The operative X Terms explicitly state that: "The choice of law, forum selection, and arbitration provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, including but not limited to any U.S. SpaceXAI, Cursor, or Space X entities, who are intended third-party beneficiaries of this paragraph . . . ." Scolari Decl. ¶ 28. Courts in this Circuit routinely enforce contractual provisions on behalf of intended third-party beneficiaries. *See, e.g.*, *Hernandez v. WM Wholesale, LLC*, No. 8:24-cv-02553-JVS-JDE, 2025 WL 21551105, at *4 (C.D. Cal. Mar. 28, 2025); *Moretti v. Hertz Corp.*, No. C 13–02972 JSW, 2014 WL 1410432, at *4 (N.D. Cal. Apr. 11, 2014). And even so, another court in this District recently found that an earlier version of the X Terms—which did not even include the "third-party beneficiary" language—nevertheless applied to SpaceXAI where the plaintiff's claims fell "within the scope of the X User Terms," as Hunt's claims do here. *Eliza Labs, Inc. v. X Corp.*, No. 25-cv-07243-AMO, 2025 WL 3003766, at *5 (N.D. Cal. Oct. 27, 2025).

identification and access. *Id.* Moreover, Hunt clicked the "Got it" button in response to a pop-up prompt about changes to the Terms of Service in September 2023. *Id.* ¶ 32. The message notified her that: "We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them." *Id.* ¶ 26.




And like the initial sign-up screen, the full text of the latest Terms of Service was linked in contrasting blue text. *Id.*

In addition, Hunt's @CheyenneHuntCA account is linked to an account with the handle @reckoningaction, which appears to be the official account for an organization called Reckoning Action. *Id.* ¶ 33. The Reckoning Action webpage lists Hunt as the organization's founder and executive director. *Id.* Hunt created the @reckoningaction account on or around May 15, 2026.

*Id*. She posted to the account as recently as last month. When Hunt created the @reckoningaction account, she agreed to version 22 of the X Terms of Service (which were the operative terms at that time). *Id.* When she signed up for that account, she would have seen the sign-in page in effect at that time, *id.* ¶ 22:




As with prior sign-up pages, that page notifies users that "[b]y signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use." *Id.*

Hunt also affirmatively agreed to version 23 of the terms on September 11, 2026. *Id.* ¶ 34. Specifically, @reckoningaction clicked "Got it," in response to the type of in-app prompt described above, to confirm agreement to the updated terms on that date. *Id.*

Both contextually and visually, the SpaceXAI and X sign-up pages and pop-up prompts provided reasonably conspicuous notice of the Terms of Service. Creating an account is the type of transaction that contemplates a continuing relationship that would ordinarily be governed by the terms of use. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024) (explaining that reasonable consumer would expect that an ongoing relationship would be governed by terms of use). All the more so given that Buist, Spetsas, and Hunt are all attorneys

and have *paid* subscriptions to Grok and X. *See* Scolari Decl. ¶¶ 16, 31; Compl. ¶¶ 16–17, 19. The visual placement of the notices likewise supports the conclusion that a reasonably prudent internet user would have seen them because they required no scrolling and had reasonably sized font, high contrast text, bolded links, and uncluttered presentation.

Courts routinely enforce policies with comparable designs. *See, e.g.*, *Keebaugh*, 100 F.4th at 1020–21 (enforcing terms of use where notice appeared below action button and used "contrasting white font" hyperlinks with white borders on dark background); *Javier v. Assurance IQ, LLC*, No. 4:20-cv-02860-JSW, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) (finding sufficient notice where webpage "was uncluttered, with only a few entry fields followed by the disclosure on a single page; the text placed hyperlinks in a different color to indicate their selectability; and there were no additional features . . . that would have obscured the notice"); *Peter,* 445 F. Supp. 3d at 586–87 (concluding that terms of use were enforceable where notice is "uncluttered and wholly visible," notice text appears close "to the sign-up button," and "text contrasts clearly with the background and is plainly readable").

Plaintiffs' continued use of Grok and Grok on X—including as recently as last week—also supports the conclusion that they have agreed to and are bound by the Terms of Service. Scolari Decl. ¶¶ 16, 30. Indeed, courts have repeatedly enforced the X Terms of Service (which are materially identical to the SpaceXAI Consumer Terms of Service) based on continued use of the platform. *See Doe v. X Corp.*, No. 25-cv-07597-TLT, 2025 WL 3500543, at *7 (N.D. Cal. Nov. 6, 2025) (holding that plaintiffs "assented to the revised Terms of Service when he continued to use the website"); *Eliza Labs*, 2025 WL 3003766, at *4 (concluding that "there can be no serious question as to whether Plaintiffs voluntarily assented to [the X Terms] by acknowledging receipt and continuing to use the X platform"); *see also St. Clair v. X.AI Holdings Corp.*, No. 26-cv-00386-ALC, 2026 WL 1803744, at *3 (S.D.N.Y. June 23, 2026) (finding that evidence of continued use was "sufficient to establish Plaintiff manifested assent" to revised version of X Terms).[3]

---

[3] Although a court in this district concluded that the SpaceXAI sign-up page did not provide reasonably conspicuous notice, that decision has no bearing on the enforceability of the Terms of

Plaintiffs were on notice of and expressly assented to the SpaceXAI and X Terms of Service, and they should therefore be bound by the forum-selection clauses in those agreements.

*2. Plaintiffs' claims fall within the scope of the forum-selection clauses in the Terms of Service.*

The basic theory in this case is that Defendants supposedly entered into an agreement to slow the pace of artificial intelligence development and that, as a result, Plaintiffs will get less from their paid consumer subscriptions to Grok. Plaintiffs' claims relate directly to their use of Grok and Grok on X and therefore fall squarely within the broad scope of the forum-selection clauses in the SpaceXAI Consumer Terms of Service and X Terms of Service.

The forum-selection clause in both the SpaceXAI Consumer Terms of Service and X Terms of Service apply broadly to any disputes related to or arising from the use of the companies' services. The September 1, 2026 version of the SpaceXAI Consumer Terms of Service, which Buist and Spetsas agreed to less than a week before filing this lawsuit, provide:

> [A]ll disputes related to these Terms, the Service, or any patents—including without limitation disputes related to or arising from . . . your or others' use of the Service or the complete or partial termination thereof—shall be brought and must proceed exclusively in the federal U.S. District Court or the state courts located in Wichita County or Tarrant County, Texas . . . . For the avoidance of doubt, the choice of law, forum selection, and arbitration provisions of this section shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law or otherwise . . . .

Scolari Decl. ¶ 12. And the current version of the X Terms of Service, to which Hunt agreed by continuing to use X as recently as last week, similarly state:

> [A]ll disputes related to these Terms, Service, or any patents—including without limitation related to or arising from . . . your or others' use of the Services or the complete or partial termination thereof—shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County Texas . . . . For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise . . . .

---

Service here. *Skaggs v. X.AI, LLC*, No. 26-cv-04550-BLF, 2026 WL 2352969, *7 (N.D. Cal. Aug. 13, 2026). Unlike in this case, the plaintiff in *Skaggs* was not a paid subscriber or an active user, and there was no evidence that he had affirmatively acknowledged updates to the Terms of Service in response to in-app prompt.

*id.* ¶ 28. By their plain terms, these forum-selection clauses are, without a doubt, broad enough to reach Plaintiffs' claims. *See Sun*, 901 F.3d at 1086 (interpreting "forum-selection clauses covering disputes 'relating to' a particular agreement [to] apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement").

Plaintiffs Buist, Spetsas, and Hunt are Grok users with paid consumer subscriptions. Compl. ¶¶ 16–17, 19. They allege that, on September 12, 2026, SpaceXAI entered into an agreement with Anthropic, Google, and OpenAI to coordinate a slowdown of the pace of artificial intelligence development. *Id.* ¶¶ 71–74. Plaintiffs speculate that this supposed agreement might delay the delivery of improved capabilities to consumers at some point in the future, thereby eroding the value of their Grok subscriptions relative to a world with unrestrained competition. *Id.* ¶¶ 106–10. And Plaintiffs seek the resulting "overcharge" for their paid Grok subscriptions as damages under the Clayton Act. *Id.* ¶ 117. In other words, Plaintiffs' claims against SpaceXAI are about the price and quality of the paid Grok subscriptions they purchased. The claims are therefore "related to" Plaintiffs' use of Grok and covered by the forum-selection clauses. *See, e.g.*, *Eliza Labs*, 2025 WL 3003766, at *4 (holding that statutory and non-contractual claims—including antitrust claims under the Sherman Act and the Cartwright Act—fell within forum-selection clause in X Terms).

*3. Plaintiffs cannot rebut the presumption that the forum-selection clauses are enforceable.*

Because Plaintiffs received actual and conspicuous notice of and unambiguously assented to the SpaceXAI Consumer Terms of Service and X Terms of Service on numerous occasions, the mandatory forum-selection clauses in those Terms are presumptively enforceable. *See Atl. Marine*, 571 U.S. at 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). Plaintiffs bear a "heavy burden" in showing that the forum-selection clauses are unenforceable. *Sun*, 901 F.3d at 1084. To overcome the forum-selection clause, Plaintiffs must make a "strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum . . .' or (3) 'trial in the contractual forum will be so gravely

difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Id.* at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)). They cannot make that showing here.

The forum-selection clauses are not the product of fraud, duress, or overreaching. An agreement is enforceable unless it is both procedurally and substantively unconscionable. *Mohamed v. Uber Tech., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016). That a contract is one of adhesion does not alone make it unconscionable; to the contrary, courts routinely "enforc[e] forum selection clauses in adhesion contracts." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016); *see also Rostami v. Hypernet Inc.*, No. 22-cv-01813-EJD, 2023 WL 2717262, at *7–8 (N.D. Cal. Mar. 29, 2023) (enforcing forum-selection clause in adhesion contract). And it would be especially difficult for Plaintiffs to show unconscionability here given that they are all licensed attorneys. *See Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 953 (N.D. Cal. 2023) (noting that "sophistication of the parties" is one factor in determining whether a "contract of adhesion is . . . procedurally unconscionable").

Enforcing the clauses also would not interfere with the public policy of California. Given the strong federal policy in favor of enforcing forum-selection clauses, Plaintiffs must do more than show that the forum state has an interest in adjudicating certain claims. *See Sun*, 901 F.3d at 1089–90. They must instead identify "a statute or judicial decision that clearly states such a strong public policy." *Id.* at 1090. California has no special interest in having federal antitrust claims resolved in its courts, and the same remedies will be available to Plaintiffs in the Northern District of Texas. *See LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1205–06 (C.D. Cal. 2015) (explaining that "absent a total foreclosure of remedy in the transferee forum, courts tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a policy specifically related to venue" (quoting *Rowen v. Soundview Commc'ns, Inc.*, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015)). And "it is perfectly reasonable" for defendants with nationwide operations "to limit the fora in which they are potentially subject to suit." *Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490, 1493 n.2 (1992). Transferring this case to Texas will thus not contravene California's public policy.

Nor would enforcing the forum-selection clause deprive Plaintiffs of their day in court. As the Ninth Circuit has recognized, this factor "is difficult to satisfy" because "[w]here the parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571 U.S. at 64). In any event, the Northern District of Texas (located in the Dallas-Fort Worth metropolitan area) is easily accessible by all parties—especially for Buist and Spetsas, two Florida-based attorneys.

**B. The Court should sever the claims against SpaceXAI and transfer them to the Northern District of Texas.**

Valid and enforceable forum-selection clauses must be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (citation omitted). Plaintiffs "waive the right" to oppose an enforceable forum-selection clause on private-interest grounds. *Id.* at 63–64. The party opposing transfer under a valid and broadly scoped forum-selection clause instead "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. And because the public interest "factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

This is not an unusual case. None of the public-interest factors—*e.g.*, the relative degrees of court congestion, the courts' relative familiarity with the governing law, and any local interest in deciding localized controversies—disfavor transfer, let alone "overwhelmingly." *Id*. at 63–64, 67. Transfer would not burden the Northern District of Texas, which has less than half the number of pending actions per judgeship as the Northern District of California.[4] Moreover, this case involves only federal claims, and the Northern District of Texas is similarly situated to this Court in applying and interpreting federal law. The antitrust claims Plaintiffs assert are also not localized in any way to California; the claims implicate Texans' interests as much as Californians' interests. The public-interest factors thus weigh in favor of transfer.

---

[4] *See* U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (June 30, 2026), https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2026.pdf.

That 28 U.S.C. § 1404(a) provides only for the transfer of an entire civil action is no impediment to honoring the forum-selection clause requiring the claims against SpaceXAI to proceed exclusively in Texas. Federal Rule of Civil Procedure 21 provides the Court with a simple mechanism to effectuate the forum-selection clause: it can "sever any claim against a party." Indeed, severance is routinely granted where a court has determined that a forum-selection clause mandates transfer and "[s]everance is a necessary precursor to that transfer." *Monje*, 2013 WL 6498073, at *4. Once the Court "conclude[s] that the pertinent factors render transfer appropriate under § 1404(a), then severance, too, would be proper." *Paduano*, 55 F. Supp. 3d at 431–32 (quotation marks and alterations omitted). Because the forum-selection clauses that govern the relationship between Plaintiffs and SpaceXAI make transfer appropriate under § 1404(a), severance is proper as well. The Court should accordingly grant SpaceXAI's motion to sever and transfer the claims against it to the Northern District of Texas.

* * *

In the past year alone, at least five federal judges—including two in this District—have held that identical or substantial similar forum-selection clauses used by SpaceXAI's affiliates are valid and enforceable and have transferred case to the Northern District of Texas. *See St. Clair*, 2026 WL 1803744, at *6; *Doe*, 2025 WL 3500543, at *8; *Eliza Labs*, 2025 WL 3003766, at *7; *Taddeo-Waite v. X Corp.*, No. 3:25-CV-00874 (VDO), 2025 WL 3237422, at *4 (D. Conn. Nov. 20, 2025); *Williams v. X Corp.*, No. 1:25-00058-JB-MU, 2025 WL 2801626, at *5 (S.D. Ala. Oct. 1, 2025). This Court should do the same.

**C. Alternatively, the Court should compel arbitration.**

If the Court concludes that the forum-selection clause in the SpaceXAI Terms of Service is not enforceable against Plaintiffs, then it should compel arbitration. The SpaceXAI Terms that Buist and Spetsas agreed to and the X Terms that Hunt accepted both provide: "If, for any reason, the forum selection clause . . . is deemed unenforceable as to your dispute, then you and we agree to binding arbitration of the dispute administered by the American Arbitration Association." Scolari Decl. ¶¶ 12, 28. In deciding whether a dispute is arbitrable, the court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

agreement encompasses the dispute at issue." *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The arbitration provision in the SpaceXAI Consumer Terms of Service is valid and covers the claims asserted here for the same reasons given above. *See supra* §§ IV.A–B. The Court should accordingly compel arbitration against Buist, Spetsas, and Hunt if it does not transfer the claims against SpaceXAI.

## V. <u>CONCLUSION</u>

For the foregoing reasons, SpaceXAI respectfully requests that the Court sever and transfer the claims against the company to the United States District Court for the Northern District of Texas. In the alternative, SpaceXAI requests that the Court compel arbitration against Plaintiffs.

Respectfully submitted,

Dated: October 13, 2026

WILLENKEN LLP

By: *<u>/s/ Kenneth M. Trujillo-Jamison</u>*
Kenneth M. Trujillo-Jamison
Mayra de Aguiar

SPACEXAI LLC
Kenton Skarin (application for admission *pro hac vice* pending)
Reid Coleman (application for admission *pro hac vice* forthcoming)
*Attorneys for Defendant SpaceXAI LLC*