Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
Mayra de Aguiar (Bar No. 212709)
mdeaguiar@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Kenton Skarin (application for admission *pro hac vice* pending)
kskarin@x.ai
Reid Coleman (application for admission *pro hac vice* forthcoming)
rcoleman@x.ai
800 W. Cesar Chavez
Austin, TX 78701

*Attorneys for Defendant SpaceXAI LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES BUIST, CHEYENNE HUNT, CHRISTINE BULLOCK, and NICK SPETSAS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ANTHROPIC, PBC; OPENAI OPCO, LLC; SPACEXAI LLC; and GOOGLE LLC,

Defendants.

Case No.: 5:26-cv-10693-NC

**DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANT SPACEXAI LLC'S MOTION TO SEVER AND TRANSFER TO THE NORTHERN DISTRICT OF TEXAS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

*Filed concurrently with Defendant SpaceXAI LLC's Motion to Sever and Transfer to the Northern District of Texas or, In the Alternative, to Compel Arbitration, and [Proposed] Order*

Date: November 18, 2026
Time: 11:00 a.m.
Judge: Honorable Nathanael M. Cousins

**DECLARATION OF MEGAN SCOLARI**

I, Megan Scolari, declare as follows:

1. I am a Legal Program Manager at SpaceXAI LLC and X Corp. I have held this position since September 9, 2019. I submit this declaration in support of SpaceXAI's Motion to Sever and Transfer to the Northern District of Texas or, In the Alternative, to Compel Arbitration, filed concurrently. I am over twenty-one years old, of sound mind, and fully competent and authorized in all respects to execute this declaration. I have personal knowledge of the facts set forth in this declaration, which are true and correct.

2. My duties and responsibilities as a Legal Program Manager include managing electronic information created and stored in a variety of software systems that X, SpaceXAI, and their affiliates use in the ordinary course of business. As part of my role, I am regularly involved in assisting in the collection of evidence about aspects of services across the companies' platforms and have become familiar with how the services have been delivered over time.

3. The statements in this declaration are based on my personal knowledge, facts learned during my investigation of this matter, and the business records of X and SpaceXAI. The business records were made by, or from information transmitted by, a person with knowledge of the events. Such records are kept in the ordinary course of the regularly conducted activity of X and SpaceXAI, and making such records is a regular practice of those activities.

4. I received legal advice in connection with preparing this declaration, but this declaration is not a waiver of the attorney-client privilege or of attorney work product. Rather, it is intended to address purely factual matters that are relevant to SpaceXAI's motion.

5. I am familiar with SpaceXAI LLC's Consumer Terms of Service for the Grok platform (the "SpaceXAI Consumer Terms of Service"), and the procedures by which users agree to those terms, including updates to the terms and notifications to users informing them of updates to the terms.

6. Since Grok was launched as a standalone product in 2024, SpaceXAI LLC (formerly known as "X.AI LLC") has revised the SpaceXAI Consumer Terms of Service several times. The current version of those terms is publicly available at: https://x.ai/legal/terms-of-

service. Prior versions of the terms are also available online. For example, the September 11, 2026 terms are available at: https://x.ai/legal/terms-of-service/previous-2026-09-11. The September 1, 2026 terms are available at: https://x.ai/legal/terms-of-service/previous-2026-09-01. The June 26, 2026 terms are available at: https://x.ai/legal/terms-of-service/previous-2026-06-26. And so on. When this case, *Buist v. Anthropic*, Case No. 3:26-cv-10693, was filed on September 18, 2026, the September 11, 2026 version of the terms were in effect.

7. At all relevant times, SpaceXAI's operative terms have been prominently linked via contrasting hyperlinks on the Grok iOS app sign-up screen. As I explain later on, a Grok account linked to the official X account of two of the named plaintiffs' law firm, was created in July 2025. Importantly, to complete the registration process on the Grok iOS app at that time, users had to proceed past text notifying them that "[b]y continuing, you agree to the Terms of Service and Privacy Policy." In that text, the phrase "Terms of Service" appeared in bold, white text set against a black background and contained a hyperlink to the then-current Terms. All users creating accounts on the Grok iOS app at this time would have been presented with similar text. The screenshot below depicts the sign-up page as it existed in July 2025:




8. The September 1, 2026 version of the SpaceXAI Consumer Terms of Service provides: “These Terms of Service (“Terms”) apply to your or others’ access, interactions and/or use of Grok, Grokpedia, and SpaceXAI’s other service for individuals, including associated applications, features, tools, software and websites (collectively, the “Service”). These Terms form an agreement between you and SpaceXAI LLC (“SpaceXAI,” “we,” “our,” or “us”) when you accept these Terms or when you otherwise access, interact with, and/or use the platform. SpaceXAI LLC is a Nevada company, with its registered offices at 800 W Cesar Chavez St., Austin, TX 78701, USA. By accessing and using our Service, you acknowledge and agree to these Terms and any other applicable terms and policies, including our Acceptable Use Policy.”

The prior versions of the terms, including all versions dating back to at least June 2025, contained a similar provision.

9. The introduction to the September 1, 2026 version of the SpaceXAI Consumer Terms of Service notifies users of several important provisions contained in the terms using a bullet-point list. As relevant here, the very first bullet notifies users that "We reserve the right to modify these Terms." And the fourth bullet states: "[A]ny disputes between you and us will be resolved by a court in Tarrant County or Wichita County, Texas, based on Texas law, except that if the forum selection clause in these Terms is unenforceable for any reason, then the dispute will be arbitrated." The September 11, 2026 version of the terms contained identical provisions.

10. SpaceXAI notified users about changes to the terms in June and September of this year. During this time, SpaceXAI served a prompt to all Consumer Grok users who logged in to their accounts. Below is a screenshot of the prompt that SpaceXAI served to users in connection with the June and September 2026 updates to the SpaceXAI Consumer Terms of Service:




11. The prompt served with the updates included, in bolded black font, hyperlinks to the full text of the updated terms and acceptable use policy. At the bottom of the prompt, the user

was asked to click a button labeled "Got it." The prompt was served until the user clicked "Got it."

12. A true and correct copy of the September 1, 2026 version of the SpaceXAI Consumer Terms of Service is attached as **Exhibit A**. Section 14 of those terms provide:

> Notwithstanding any other agreement to the contrary, unless prohibited by your country's applicable law, all disputes related to these Terms, the Service, or any patents – including without limitation disputes related to or arising from any User Content (whether your or others' User Content), or your or others' use of the Service or the complete or partial termination thereof—shall be brought and must proceed exclusively in the federal U.S. District Court or the state courts located in Wichita County or Tarrant County, Texas, United States, and you and we consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.
>
> If, for any reason, the forum selection clause in the above paragraph is deemed unenforceable as to your dispute, then you and we agree to binding arbitration of the dispute administered by the American Arbitration Association before an arbitrator who shall be a retired federal district or appellate court judge. . . .
>
> For the avoidance of doubt, the choice of law, forum selection, and arbitration provisions of this section shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise, and the choice of law, forum selection, and arbitration provisions of this section shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred. The choice of law, forum selection, and arbitration provisions of this section shall also extend to disputes involving our corporate affiliates, including but not limited to any X, Cursor, or SpaceX entities, who are intended third-party beneficiaries of this paragraph and who also consent to jurisdiction and venue in the courts specified in this section and to the arbitration provision in this section.

13. The version of the SpaceXAI Consumer Terms of Service, which went into effect on September 11, 2026, contained similar provisions. A true and correct copy of the September 11, 2026 version of the terms is attached as **Exhibit B**.

14. The version of the SpaceXAI Consumer Terms of Service that went into effect on June 26, 2026, included a similar forum-selection clause (but did not include the language related to arbitration). A true and correct copy of the June 26, 2026 version of the terms is attached as **Exhibit C**.

15. The version of the SpaceXAI Consumer Terms of Service that was in effect in July 2025 also contained a forum-selection clause designating Texas as the exclusive forum for disputes. That provision states: "**Governing Law; Jurisdiction and Venue.** This agreement and all claims or disputes between You and xAI shall be governed by the laws of Texas without regard to conflict of law principles, and shall be brought exclusively in the state and federal courts in Tarrant County, Texas, and the parties hereby irrevocably consent to the exclusive jurisdiction and venue of such courts." A true and correct copy of the June 9, 2025 version of SpaceXAI Consumer Terms of Service that were in effect in July 2025 is attached as **Exhibit D**.

16. I have reviewed the complaint filed in this case. Based on my investigation to date and my review of the complaint, I understand that there is at least one Grok account associated with plaintiffs Charles Buist and Nick Spetsas. Buist and Spetsas are attorneys at the Orlando-based law firm Spetsas Buist Accident Injury Lawyers, PLLC. Buist and Spetsas also have an X account for their firm with the handle @SpetsasBuist, which was created on October 4, 2021. The account @SpetsasBuist posted as recently as April 21, 2026. The firm's official X account is linked to a Grok account that was created on under the name "Charles Buist" on or around July 11, 2025. The Buist and Spetsas Grok account has periodically submitted queries since it was created, including as recently as October 3, 2026. The account was upgraded to a paid consumer subscription on September 3, 2026.

17. When the Spetsas Buist Grok account was created, the individual creating the account would have been presented with the message that "[b]y continuing, you agree to the Terms of Service and the Privacy Policy." The sign-up screen would be similar to the screenshot included earlier in this declaration.

18. The Spetsas Buist Grok account also specifically acknowledged the September 1 version of the SpaceXAI Consumer Terms of Service on September 11, 2026. Specifically, based on my review of available data, I have confirmed that the Spetsas Buist Grok account clicked "Got it," in response to the SpaceXAI prompt described above, to indicate they acknowledged the updated September 1 version of the SpaceXAI Consumer Terms of Service.

19. I am also familiar with the X Terms of Service for the X Platform, sometimes called "Twitter," and the procedures by which users agree to those terms, including updates to the terms and notifications to users informing them of updates to the terms.

20. Since Twitter was launched in 2006, X Corp. or its predecessor-in-interest, Twitter, Inc., has revised its Terms of Service several times. The current version of the X Terms of Service is publicly available at https://x.com/en/tos. All prior material versions of the Terms of Service are publicly available at https://x.com/en/tos/previous. When this case was filed, version 22 of the X Terms of Service was in effect.

21. At all relevant times, the operative version of the X Terms of Service has been prominently linked on X's home page. As I explain later on, the X account associated with a third named plaintiff in this suit was created in January 2020. Importantly, to complete the registration process at that time, users had to proceed past a banner notifying them that "[b]y signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use." The phrase "Terms of Service" prominently appeared as a blue hyperlink that redirected users to the operative Terms. All users creating accounts at this time would have been presented with a similar notification. The screenshot below depicts the sign-up page as it existed at that time:



22. The sign-up screen for X accounts created more recently likewise notifies users that "[b]y signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use." The screenshot below depicts the sign-up screen as it existed in May 2026:




23. Version 22 of the X Terms of Service provides: "These Terms of Service ("Terms") govern your relationship with us and your and other users' access to and use of, and anything otherwise relating to, our or our corporate affiliates' services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services . . . that link to these Terms (collectively, the 'Services'), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as 'Content'). By using the Services you agree to be bound by these Terms. These Terms are an agreement between you and X Corp., which provides X and the Services, with its registered office at 865 FM 1209, Building 2, Bastrop, TX 78602 U.S.A. The words 'we,' 'us,' and 'our' mean X Corp."

24. Section 6 of version 22 of the X Terms of Service provides: "We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the

Terms, which will always be at https://x.com/tos, will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."

25. It is X Corp.'s longstanding business practice to give notice of each materially new version of the terms to all users. Specifically, each time that X Corp. has made material revisions to the terms, it has given notice via the platform by a notification that appears when users log in to their accounts. At the bottom of the notification, users are asked to click "Got it" to confirm their acknowledgment of the updated terms.

26. Relevant here (for reasons explained below), X Corp. notified users about the September 29, 2023 changes to the X Terms of Service (version 19) starting on August 30, 2023. During this time, X Corp. served a prompt to all X users who logged in to their accounts. In the prompt, the full text of the latest Terms of Service and Privacy Policy were linked in contrasting blue text. Below is a screenshot of the prompt that X Corp. served to users in connection with the September 29, 2023 update to the terms:




27. Starting on September 9, 2026, X Corp. served a similar prompt to users in connection with the October 9, 2026 update to the X Terms of Service:




28. The current version of the X Terms of Service (version 23), effective October 9, 2026, provides:

> Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Services, or any patents — including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services or the complete or partial termination thereof — shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas, United States, and you and we consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.
>
> If, for any reason, the forum selection clause in the above paragraph is deemed unenforceable as to your dispute, then you and we agree to binding arbitration of the dispute administered by the American Arbitration Association before an arbitrator who shall be a retired federal district or appellate court judge. The arbitration shall be conducted in the English language in Tarrant County, Texas, except as required by law. The arbitrator shall have the authority to grant any

provisional or permanent remedy or relief that would be available from a court of competent jurisdiction, except that the arbitrator shall be prohibited from granting injunctive relief. The arbitrator's award shall be final and binding, and the parties waive any right to appeal the award to the maximum extent permitted by law. Except as required by law, the arbitration shall be confidential and neither a party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. Each party shall bear its own costs of the arbitration, including attorneys' fees, unless the arbitrator determines that a party's claims or defenses were frivolous or brought in bad faith, in which case the arbitrator may award costs and reasonable attorneys' fees to the prevailing party.

The parties agree that any arbitration shall be conducted on an individual basis only, and not as a class, collective, or representative action. The arbitrator shall have no authority to consolidate claims or to preside over any form of class, collective, or representative proceeding.

For the avoidance of doubt, the choice of law, forum selection, and arbitration provisions of this section shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise, and the choice of law, forum selection, and arbitration provisions of this section shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred. The choice of law, forum selection, and arbitration provisions of this section shall also extend to disputes involving our U.S. corporate affiliates, including but not limited to any U.S. SpaceXAI, Cursor, or SpaceX entities, who are intended third-party beneficiaries of this paragraph and who also consent to jurisdiction and venue in the courts specified in this section and to the arbitration provision in this section.

29. A true and correct copy of the current version of the X Terms of Service terms (effective October 9, 2026) is attached as **Exhibit E**.

30. Based on my investigation to date and my review of the complaint, I understand that Plaintiff Cheyenne Hunt has an X account with the handle @CheyenneHuntCA. She created this account using a web browser on or around January 31, 2020, and has posted regularly from the account—including as recently as last week. Hunt is an extremely active X user. Indeed, she accessed her account around 500 times in just the past ninety days.

31. Hunt is an X Premium+ subscriber, which gives her access to advanced creator tools and, relevant here, a SuperGrok subscription (which is one of the lower paid Grok subscription tiers). X Premium+ users can access their Grok subscription directly in X ("Grok on X") or by creating a standalone Grok account and linking it to their X account. Based on my

investigation, there is no Grok account linked to Hunt's X account, which means that she is only accessing Grok through the X application or X.com. As a result, her use of Grok would be governed by the X Terms of Service rather than the SpaceXAI Terms of Service.

32. By using X, Hunt agreed to the X Terms of Service. She also affirmatively accepted version 19 of the X Terms of Service on September 7, 2023. Specifically, based on my review of available data, I have confirmed that @CheyenneHuntCA clicked "Got it," in response to the August/September 2023 in-app prompt described above, acknowledging the updated version 19 terms on that date. And like all other relevant versions of the terms, version 19 included language stating that continued use after an update of the terms constitutes agreement to the revised terms.

33. Based on my investigation, I also understand that the @CheyenneHuntCA account is linked to an account with the handle @reckoningaction, which appears to be the official account for an organization called Reckoning Action. The Reckoning Action webpage lists Hunt as the organization's founder and executive director. Hunt created the @reckoningaction account on or around May 15, 2026, and posted to the account as recently as last month. When Hunt created the @reckoningaction account, she agreed to version 22 of the X Terms of Service (which were the operative terms at that time).

34. Hunt also affirmatively agreed to version 23 of the terms on September 11, 2026. Specifically, based on my review of available data, I have confirmed that @reckoningaction clicked "Got it," in response to September/October 2026 in-app prompt described above, acknowledging the updated version 23 terms on that date. Version 23 of the terms went into effect October 9, 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 13, 2026

Signed by:

By: Megan Scolari
7A28F07B5E1B430...
Megan Scolari