Nicholas C. Rowley (SBN 220036)
Lead Counsel
**TRIAL LAWYERS FOR JUSTICE**
8235 Santa Monica Blvd.
West Hollywood, CA 90046
Tel.: (310) 855-3727
Fax: (310) 855-3595
ncr@tl4j.com

Andrew T. Tutt (SBN 343206)
R. Stanton Jones (DC Bar No. 987088)
**TRIAL LAWYERS FOR JUSTICE**
421 W. Water Street
Decorah, IA 52101
Tel.: (919) 699-5905 (Tutt)
Tel.: (202) 550-3260 (Jones)
Fax: (563) 204-4205 (Tutt)
andrew@tl4j.com; stanton@tl4j.com

Jakob Z. Norman (WY Bar No. 6-3685)
**TRIAL LAWYERS FOR JUSTICE**
724 S. Durbin Street
Casper, WY 82601
Tel.: (307) 288-4400 ext. 101
jakob@tl4j.com

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CHARLES BUIST, CHEYENNE HUNT, CHRISTINE BULLOCK, and NICK SPETSAS, individually and on behalf of all others similarly situated,<br>*Plaintiffs*,<br><br>v.<br><br>ANTHROPIC, PBC; OPENAI OPCO, LLC; SPACEXAI LLC; AND GOOGLE LLC,<br>*Defendants.* | Case No. 5:26-cv-10693-NC<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT SPACEXAI LLC'S MOTION TO SEVER AND TRANSFER OR, ALTERNATIVELY, TO COMPEL ARBITRATION<br><br>Hearing: November 18, 2026<br>Time: 11:00 a.m.<br>Courtroom 5, San Jose<br>Judge: Hon. Nathanael M. Cousins |

# TABLE OF CONTENTS

INTRODUCTION ..... 1
STATEMENT OF ISSUES ..... 2
FACTUAL BACKGROUND ..... 3
A. Plaintiffs' Claims ..... 3
B. SpaceXAI's Motion ..... 3
STANDARD OF REVIEW ..... 4
ARGUMENT ..... 5
I. SpaceXAI's Motion Should Be Denied Because SpaceXAI Has Not Established Enforceable Texas Forum or Arbitration Agreements With Plaintiffs ..... 5
A. Plaintiff Christine Bullock Asserts Antitrust Conspiracy Claims Against SpaceXAI But Does Not Have Any Agreement With It ..... 5
B. SpaceXAI Has Not Established That Plaintiff Cheyenne Hunt Agreed to Either a Texas Forum or Arbitration ..... 7
C. SpaceXAI Has Not Established That Plaintiffs Charles Buist and Nick Spetsas Validly Assented to SpaceXAI's Terms of Service ..... 8
II. SpaceXAI's Request for Severance and Transfer Independently Fails Because It Would Fragment Litigation Regarding a Single Antitrust Conspiracy ..... 12
III. SpaceXAI's Request to Compel Arbitration Independently Fails Because the Arbitration Provisions Eliminate Plaintiffs' Statutory Right to Injunctive Relief ..... 15
CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*American Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013)....................15

*American Title Insurance Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988)....................11

*Ashley Furniture Industries, Inc. v. Packaging Corp. of America*,
275 F. Supp. 3d 957 (W.D. Wis. 2017)....................12

*Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*,
571 U.S. 49 (2013)....................4, 5, 8, 12

*Benasra v. Marciano*,
92 Cal. App. 4th 987 (2001)....................8

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................5, 8, 9, 11

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025)....................9

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015)....................8

*Eliza Labs, Inc. v. X Corp.*,
2025 WL 3003766 (N.D. Cal. Oct. 27, 2025)....................8

*Gafita v. Nucs AI, Inc.*,
2026 WL 1348286 (N.D. Cal. May 14, 2026)....................4, 5

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)....................10

*Graham Oil Co. v. ARCO Products Co.*,
43 F.3d 1244 (9th Cir. 1994)....................15

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
2014 WL 2581581 (N.D. Cal. June 9, 2014)....................6

*In re National Football League's Sunday Ticket Antitrust Litigation*,
933 F.3d 1136 (9th Cir. 2019)....................6

*In re Rolls Royce Corp.*,
775 F.3d 671 (5th Cir. 2014)....................12, 13

**Cases—Continued** **Page(s)**

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) ....2, 12, 13

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....5, 11

*Paduano v. Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) ....14

*Platt v. Sodexo, S.A.*,
148 F.4th 709 (9th Cir. 2025) ....15

*Pospisil v. ATP Tour, Inc.*,
2026 WL 2958066 (S.D.N.Y. Sept. 30, 2026) ....12, 13

*Rose v. SpaceXAI LLC*,
2026 WL 3169664 (N.D. Cal. Oct. 22, 2026) ....9

*Skaggs v. X.AI, LLC*,
2026 WL 2352969 (N.D. Cal. Aug. 13, 2026) ....9

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....15

*Sperring v. LLR, Inc.*,
995 F.3d 680 (9th Cir. 2021) ....6

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ....11

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ....6

*United States for Use and Benefit of Exposed Roof Design, LLC v. Tandem Roofing, LLC*,
2023 WL 7688584 (E.D. La. Nov. 14, 2023) ....12, 13

*Valspar Corp. v. E.I. DuPont de Nemours & Co.*,
15 F. Supp. 3d 928 (D. Minn. 2014) ....14

*Ward v. Apple Inc.*,
791 F.3d 1041 (9th Cir. 2015) ....6

*Wood v. MyPillow, Inc.*,
2026 WL 1763858 (N.D. Cal. June 18, 2026) ....10

| Statutes | Page(s) |
|---|---|
| 9 U.S.C. § 2 | 5 |
| 9 U.S.C. § 3 | 15 |
| 9 U.S.C. § 4 | 5 |
| 15 U.S.C. § 1 | 3 |
| 15 U.S.C. § 26 | 2, 3, 15 |
| 28 U.S.C. § 1404(a) | 4 |

# INTRODUCTION

In this putative antitrust class action, Plaintiffs challenge an anticompetitive agreement among horizontal competitors—Anthropic, OpenAI, SpaceXAI, and Google—to slow the pace at which they improve the capabilities of their competing AI products. Plaintiffs sue on behalf of themselves and a proposed class of paying subscribers who receive less value for their money because Defendants have agreed to improve those products more slowly than they otherwise would. They seek compensation for that lost value and an injunction restoring competition.

SpaceXAI now asks this Court to sever selected Plaintiffs' claims against it, transfer those claims to Texas, or compel individual arbitration. The motion should be denied. SpaceXAI seeks transfer *solely* to enforce forum-selection clauses in certain of its subscriber agreements. Mot. 9-10, 21-22. But SpaceXAI has not established an enforceable Texas forum-selection or arbitration agreement with any of the four named Plaintiffs or the many class members like them.

*First*, SpaceXAI cannot enforce a forum-selection clause against plaintiffs like Christine Bullock who do not have any contract whatsoever with SpaceXAI. Bullock asserts claims against SpaceXAI for its role in the alleged antitrust conspiracy, and she has no contract with SpaceXAI. SpaceXAI cannot enforce a forum selection clause against a person who has no contract with it.

*Second*, SpaceXAI lacks a Texas forum-selection or arbitration agreement with plaintiffs like Cheyenne Hunt who have not agreed to a contract that in fact contains such a provision. SpaceXAI has failed to show that Hunt ever agreed to a contract requiring her to litigate these antitrust claims in Texas or to arbitrate them. It relies on acknowledgments through a separate organizational account without establishing that those acknowledgments bind Hunt personally. SpaceXAI cannot enforce a Texas forum-selection clause against a person it has not shown to be bound by that clause.

*Third*, SpaceXAI lacks an enforceable forum-selection or arbitration agreement with plaintiffs like Charles Buist and Nick Spetsas who SpaceXAI has not shown validly assented to its terms. To enforce either clause against them, SpaceXAI must prove notice and assent: reasonably conspicuous notice of its terms and conduct unambiguously manifesting agreement. It has not. Its

sign-up screen placed the notice in small, muted text beneath three sign-up buttons, the problem two judges of this District identified in rejecting SpaceXAI's attempt to impose these terms on its users. And for the rest of the putative class, SpaceXAI offers only general descriptions of the same screen and prompt, and no evidence that any other purchaser assented.

Even if SpaceXAI had established enforceable Texas forum-selection agreements with Plaintiffs (and it has not), the Court still should deny severance and transfer because it would pointlessly fragment the litigation. Transferring any subset of Plaintiffs' antitrust conspiracy claims against SpaceXAI to Texas would leave every Plaintiff and every Defendant litigating the same antitrust conspiracy here while forcing SpaceXAI and the transferred Plaintiffs to litigate it again in Texas. Courts have denied severance and transfer to avoid precisely that duplication. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 1477748, at *2 (N.D. Cal. Apr. 14, 2014).

Lastly, SpaceXAI's arbitration provisions are unenforceable as written because they prohibit the arbitrator from granting any injunction, eliminating the relief Congress expressly authorized in Section 16 of the Clayton Act. 15 U.S.C. § 26. The Court should reject those provisions or, at a minimum, invalidate the unlawful restrictions and preserve all statutory remedies.

The Court should deny the motion in its entirety. Alternatively, any order compelling arbitration of any Plaintiff's claims against SpaceXAI must first invalidate the unlawful remedial restrictions and preserve the full relief Congress authorized. Plaintiffs further request that any claims sent to arbitration be stayed rather than dismissed and that the remaining claims proceed here.

## STATEMENT OF ISSUES

1. Whether SpaceXAI has established enforceable agreements requiring Bullock, Hunt, Buist, or Spetsas to litigate in Texas or arbitrate.

2. Whether, even as to any Plaintiff bound by an enforceable Texas forum-selection clause, the Court should decline to sever claims against one alleged conspirator and transfer them to Texas when the same conspiracy claims will be litigated in this Court in any event.

3. Whether arbitration provisions that prohibit the arbitrator from granting injunctive relief may be enforced against Plaintiffs' claim under Section 16 of the Clayton Act.

## FACTUAL BACKGROUND

### A. Plaintiffs' Claims

The Complaint alleges that the four leading artificial-intelligence companies in the United States agreed to slow the pace at which they improve the capabilities of their competing AI products. On September 12, 2026, Anthropic's Chief Executive Officer, Dario Amodei, published an essay titled *We Must Pace the Frontier*, whose proposal was direct: "We must slow the pace at which we improve the capabilities of AI models." Compl. ¶¶ 24, 61-62. Within about an hour, Elon Musk, who controls SpaceXAI's AI business, responded: "Dario is right." *Id.* ¶¶ 30, 71. OpenAI's Sam Altman and Google DeepMind's Demis Hassabis accepted the proposal the same day. *Id.* ¶¶ 72-73. The Complaint alleges that the agreement remains ongoing. *Id.* ¶¶ 81, 148.

Plaintiffs buy paid subscriptions to the products whose improvement Defendants agreed to slow. Buist and Spetsas subscribe to Claude, ChatGPT, Grok, and Gemini. *Id.* ¶¶ 16, 19. Bullock subscribes to Claude. *Id.* ¶ 18. Hunt subscribes directly to Claude, ChatGPT, and Gemini, and pays for Grok through her X Premium+ subscription. *Id.* ¶ 17; Scolari Decl. ¶ 31. Defendants' agreement, Plaintiffs allege, leaves subscribers with less capability and slower improvement for the prices they pay. Compl. ¶¶ 115-119. Both counts, under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 16 of the Clayton Act, 15 U.S.C. § 26, are brought against all Defendants and seek treble damages and an injunction against the continuing restraint. *Id.* at 25, 27; *id.* ¶¶ 135-152. Plaintiffs sue for themselves and a proposed nationwide class of persons in the United States who bought a paid individual consumer subscription providing premium access to Claude, ChatGPT, Grok, or Gemini directly from a Defendant during the Class Period, with Defendant-specific subclasses. *Id.* ¶¶ 123-24.

### B. SpaceXAI's Motion

SpaceXAI asks the Court to sever Buist's, Spetsas's, and Hunt's claims against it and transfer them to the Northern District of Texas or, alternatively, to compel Buist, Spetsas, and Hunt to arbitrate. Mot. 1, 9-10, 21-23. It identifies no agreement with Bullock; a footnote says she "asserts no claims against SpaceXAI." *Id.* at 8 n.1.

For Hunt, SpaceXAI relies on X's terms, which its declarant says govern her use of Grok. Scolari Decl. ¶ 31. Hunt's personal account acknowledged version 19 of those terms on September 7, 2023. *Id.* ¶ 32. Version 22 was in effect when Plaintiffs sued. *Id.* ¶ 20. The only acknowledgment of version 23 that SpaceXAI identifies came from @reckoningaction, the account of an organization Hunt founded, on September 11, 2026. *Id.* ¶¶ 33-34. Version 23 took effect on October 9, 2026, and is the only X version in the record with an arbitration clause. *Id.* ¶ 34; *id.* Ex. E § 6.

For Buist and Spetsas, SpaceXAI relies on a Grok account linked to their law firm's X account and created under Buist's name in July 2025 through an iOS sign-up screen, and on a September 11, 2026 "Got it" click on that account in response to a prompt announcing updated terms. Mot. 3-5, 12-13; Scolari Decl. ¶¶ 7, 10-11, 16-18. The September 1, 2026 terms select courts in Tarrant or Wichita County, Texas, and provide for arbitration if the forum clause "is deemed unenforceable as to your dispute." Scolari Decl. Exs. A-B § 14, at 5.

Both the Grok and X arbitration provisions prohibit the arbitrator from granting injunctive relief. *Id.* Exs. A-B § 14, at 5; *id.* Ex. E § 6, at 12.

## STANDARD OF REVIEW

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice," to a district where the action might have been brought or to which all parties have consented. 28 U.S.C. § 1404(a). Ordinarily, the Court weighs the parties' and witnesses' convenience and the public interests, while giving weight to Plaintiffs' choice of forum. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62-63 & n.6 (2013). If the defendant establishes a binding agreement between the parties with a forum-selection clause requiring litigation in another forum, the analysis changes. "Defendants bear the burden of demonstrating the existence of a contract and the inclusion of the forum selection clause in that contract." *Gafita v. Nucs AI, Inc.*, 2026 WL 1348286, at *3 (N.D. Cal. May 14, 2026). *Atlantic Marine* expressly "presupposes a contractually valid forum-selection clause." 571 U.S. at 62 n.5. If the defendant proves such an agreement to litigate in another forum, the plaintiff's forum choice receives no weight, and the parties' private interests are deemed to favor the agreed forum. *Id.* at 63-64. The Court considers public-interest

factors, and the plaintiff opposing transfer must show that those factors "overwhelmingly disfavor a transfer." *Id.* at 67. Those factors include judicial congestion, local interests, and the burden of duplicative proceedings. *Id.* at 62 n.6; *Gafita*, 2026 WL 1348286, at *4-5.

The Federal Arbitration Act likewise requires an agreement to arbitrate before a court may compel arbitration. 9 U.S.C. §§ 2, 4. The Court must determine whether a valid arbitration agreement exists and whether it encompasses the dispute. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). In *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), the Ninth Circuit held that "the burden is on [the defendant] as the party seeking arbitration to show that it provided notice of a new TOS [terms of service] and that there was mutual assent to the contractual agreement to arbitrate." *Id.* at 1099. SpaceXAI bears that burden here; Plaintiffs need not prove the absence of notice or assent. *Id.* at 1100.

## ARGUMENT

### I. SpaceXAI's Motion Should Be Denied Because SpaceXAI Has Not Established Enforceable Texas Forum or Arbitration Agreements With Plaintiffs

SpaceXAI's entire motion rests on its assertion that Plaintiffs agreed to terms of service requiring litigation in Texas or individual arbitration. It seeks severance so that it can enforce those asserted contractual obligations. Mot. 10-23. As the movant, SpaceXAI must first establish the binding agreement it invokes against each Plaintiff. *Gafita*, 2026 WL 1348286, at *3; *Jackson*, 65 F.4th at 1099-1100. SpaceXAI has not carried its burden as to any Plaintiff.

#### A. Plaintiff Christine Bullock Asserts Antitrust Conspiracy Claims Against SpaceXAI But Does Not Have Any Agreement With It

SpaceXAI cannot compel transfer to Texas or arbitration with Plaintiff Christine Bullock, and class members like her, who assert claims against SpaceXAI but have never entered into a contract with it. SpaceXAI does not contend that it has any agreement with Bullock. Instead, it states, in a footnote, that Bullock "asserts no claims against SpaceXAI because she is only alleged to have a paid subscription to Anthropic's Claude." Mot. 8 n.1. That is factually and legally incorrect, and it matters well beyond Bullock. The proposed class includes direct purchasers of

individual Claude, ChatGPT, and Gemini subscriptions, none of whom must have bought Grok or accepted SpaceXAI's terms to be a class member. Compl. ¶¶ 123-24. Bullock is one of them.

It is blackletter law that consumers may bring antitrust claims against all the co-conspirators in an antitrust conspiracy. The Ninth Circuit's decision in *In re National Football League's Sunday Ticket Antitrust Litigation*, 933 F.3d 1136 (9th Cir. 2019), is directly on point. There, subscribers who purchased from DirecTV pursued claims against the NFL and its teams for their participation in the same conspiracy, because "a plaintiff who is the immediate purchaser from any of the conspirators is directly injured by the violation." *Id.* at 1157. The rule applies to conspiracies restricting output as well as those fixing prices. *Id.* at 1158. Accordingly, in *Ward v. Apple Inc.*, 791 F.3d 1041, 1048-49 (9th Cir. 2015), *abrogated on other grounds by Sperring v. LLR, Inc.*, 995 F.3d 680 (9th Cir. 2021), the Ninth Circuit explained that customers alleging an Apple-AT&T conspiracy could recover their damages from Apple alone, without joining AT&T. That is the ordinary rule of joint and several liability, which "simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *see also, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2014 WL 2581581, at *3-4 (N.D. Cal. June 9, 2014) (forum clause governing a buyer's purchases from one conspirator did not reach that conspirator's joint and several liability for the buyer's purchases from other conspirators).

The claims of the class members who subscribe to any of the three other Defendants' products, but not to Grok, fit that rule exactly. Both counts are brought "Against All Defendants," including SpaceXAI. Compl. at 25, 27. Bullock is a prime example. Bullock personally purchased Claude and continues to subscribe, *id.* ¶ 18; each Defendant allegedly participated in the same conspiracy and is liable for its co-conspirators' acts; and all Defendants are jointly and severally liable for the resulting damages, *id.* ¶¶ 35, 122. The subscriber subclasses identify whose purchases are included; they do not limit each purchaser's conspiracy claim to her seller. *Id.* ¶¶ 18, 35, 122-24, 144-150. Bullock also seeks to represent similarly situated purchasers. *Id.* ¶ 123; *id.* at 28 (Prayer A). SpaceXAI identifies no agreement with Bullock, and it does not ask the Court to

transfer her claims or compel her to arbitrate. Dkt. 35-7. Whatever happens to the other Plaintiffs' claims, the motion leaves SpaceXAI defending Bullock's claims, and her request for class relief, here.

### B. SpaceXAI Has Not Established That Plaintiff Cheyenne Hunt Agreed to Either a Texas Forum or Arbitration

SpaceXAI cannot compel transfer to Texas or arbitration with Plaintiff Cheyenne Hunt because she assented to terms of service that do not contain either a Texas forum selection clause or an arbitration agreement. Countless other class members have entered into various agreements with SpaceXAI or its corporate affiliates over the years, but at least some of those agreements lacked Texas forum selection clauses and/or agreements to arbitrate.

Hunt is a perfect example. SpaceXAI has not established that Hunt agreed to any terms of service that require litigation in Texas or arbitration. In a declaration, SpaceXAI's declarant Megan Scolari says that Hunt's Grok access is governed by X's terms of service. Scolari Decl. ¶ 31. Scolari identifies a September 7, 2023 acknowledgment of "version 19" of X's terms by Hunt's personal account, @CheyenneHuntCA, but no later acknowledgment by that account. *Id.* ¶ 32. Version 19, however, does not have a Texas forum selection clause or an arbitration clause—to the contrary, it requires that all disputes "be brought solely in the federal or state courts located in San Francisco County, California." Declaration of Andrew T. Tutt ("Tutt Decl."), Ex. A (X Terms of Service, version 19), § 6; *see* Scolari Decl. ¶ 20 (prior versions publicly available).

The Court should reject outright SpaceXAI's bizarre claim that Hunt agreed to litigate personal claims against SpaceXAI in Texas based on the operation of another account—@reckoningaction, the account of Reckoning Action, an organization Hunt founded and directs. SpaceXAI asserts that the organization's account assented to versions of X's terms of service, the latest of which selects Texas courts. Scolari Decl. ¶¶ 28, 33-34. Even crediting those assertions, they do not establish the capacity in which Hunt accepted the terms or how an acceptance on the organization's account governs her personal claims. X's terms themselves distinguish an individual's acceptance from acceptance on behalf of an entity: "you" means "the person accepting these Terms

. . . and/or the entity . . . , as applicable." *Id.* Ex. E § 1. Acceptance solely on an organization's behalf does not, without more, establish its officer's agreement in her individual capacity, and the Scolari declaration does not identify the capacity in which Hunt acted. *See Benasra v. Marciano*, 92 Cal. App. 4th 987, 990 (2001) (refusing to compel a corporate president to arbitrate individual claims under agreements he signed "as a corporate officer and only as a corporate officer"). SpaceXAI's own cases involved notice and assent by the plaintiffs themselves. *E.g.*, *Eliza Labs, Inc. v. X Corp.*, 2025 WL 3003766, at *2, *4 (N.D. Cal. Oct. 27, 2025) (separate acknowledgments by both the individual plaintiff's account and the organizational plaintiff's account). *Eliza Labs* therefore does not resolve the capacity question this record presents.

Nor can SpaceXAI compel Hunt or other class members to arbitrate. The only X agreement in the record that contains an arbitration provision is version 23, and it took effect on October 9, 2026, three weeks after this action was filed. Scolari Decl. ¶¶ 20, 34; *id.* Ex. E § 6. The terms in force when Plaintiffs sued promised that changes "will not be retroactive." *Id.* ¶ 24. SpaceXAI cannot use a reserved power to amend, standing alone, to impose arbitration on Hunt's pending claims. *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966-68 (2015).

### C. SpaceXAI Has Not Established That Plaintiffs Charles Buist and Nick Spetsas Validly Assented to SpaceXAI's Terms of Service

SpaceXAI has not established that Buist or Spetsas, or numerous class members like them, validly assented to its Texas forum-selection or arbitration provision. A forum selection clause is enforceable only where it is "a contractually valid forum-selection clause." *Atlantic Marine*, 571 U.S. at 62 n.5. Under *Berman*, 30 F.4th at 856, absent actual knowledge of an online agreement, a contract based on inquiry notice requires reasonably conspicuous notice of the terms and conduct unambiguously manifesting assent. Notice is measured against "the reasonably prudent Internet user, not . . . the expert user," *id.* at 857, so Plaintiffs' profession does not establish their agreement. SpaceXAI has made neither showing for Buist or Spetsas.

SpaceXAI's own screens do not establish reasonably conspicuous notice or an unambiguous manifestation of assent. When purporting to notify users that signing up constituted agreeing

to its Terms of Service, SpaceXAI and its corporate affiliates buried the notice *under* the relevant sign-up buttons in a font and color that make it nearly invisible (dark grey on black). And when pushing out changes to its Terms of Service, SpaceXAI presented users with a button labeled "Got it" without explaining that clicking meant agreement. Mot. 13. The prompt X served for its October 2026 terms, on which SpaceXAI relies for Hunt, likewise offered a "Got it" button without explaining that clicking signifies agreement. Mot. 7; Scolari Decl. ¶ 27.[1]

The Ninth Circuit has refused to enforce online terms presented this way. In *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157-58 (9th Cir. 2025), the Ninth Circuit held that a notice placed below an alternative sign-up button falls outside the natural flow of a user who chooses a different route: "A reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook." Applying that rule, two judges of this District rejected Grok's web sign-up notice, which sat in small, muted text below the sign-up buttons. *Skaggs v. X.AI, LLC*, 2026 WL 2352969, at *5-7 (N.D. Cal. Aug. 13, 2026) (denying transfer to Texas); *Rose v. SpaceXAI LLC*, 2026 WL 3169664, at *5-6 (N.D. Cal. Oct. 22, 2026) (denying arbitration even though the plaintiff later bought a paid SuperGrok subscription, *id.* at *1-2). The iOS screen here likewise places the notice outside the natural flow of a user choosing one of the sign-up buttons: its notice appears in small, muted text at the bottom of the screen, below three large buttons ("Continue with Google," "Continue with Apple," and "Continue with X") and an intervening "Other options" link. Mot. 12; Scolari Decl. ¶ 7. A notice like that is "the antithesis of conspicuous." *Berman*, 30 F.4th at 856 (notice "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements"). And while SpaceXAI says the *Skaggs* plaintiff was not "an active user," Mot. 18 n.3, the court weighed his repeated use of Grok "throughout 2025 and 2026" and rejected the notice anyway. *Skaggs*, 2026 WL 2352969, at *5, *7.

[1] Compare SpaceXAI's layout that hides the assent to the Terms of Service (Mot. 12) to the old Twitter signup page that SpaceXAI helpfully also provides to establish Hunt's assent to Twitter's Terms in 2020 (Mot. 14).






Grok iOS sign-up screen, July 2025 (left), Mot. 12; X sign-up screen, 2020 (right), Mot. 14.

SpaceXAI's "Got it" button does not establish assent. The prompt announced "Updates to our Terms of Service and Acceptable Use Policy," said "Now's a great chance to review them," and offered a "Got it" button; it never said that clicking meant agreement, and SpaceXAI itself describes the button as asking users "to acknowledge the changes." Mot. 13; Scolari Decl. ¶¶ 10-11. Under *Godun v. JustAnswer LLC*, 135 F.4th 699, 711 (9th Cir. 2025), "[e]ven strongly implicit advisement isn't enough—a webpage *must explain that certain actions will be understood by the offeror to signal assent to contractual terms*" (emphasis added). This prompt did not. *See also Wood v. MyPillow, Inc.*, 2026 WL 1763858, at *5 (N.D. Cal. June 18, 2026) (denying arbitration where checkout screen "lack[ed] any language indicating that a user agrees to or accepts the web-site's terms and conditions").




Grok terms-update prompt, September 2026 (left), Mot. 13; X terms-update prompt, September 2026 (right), Mot. 7; *see* Scolari Decl. ¶ 27.

SpaceXAI's fallback, that continued use after the prompt formed the agreement, Mot. 17, requires proof that each Plaintiff received proper notice of the revised terms and then manifested assent. *Jackson*, 65 F.4th at 1100; *see Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085-86 (9th Cir. 2020) (later website visit did not bind user to revised terms of which she was unaware). Scolari identifies one Grok account, linked to Buist's and Spetsas's law firm's X account and created under Buist's name, together with its paid upgrade, its September acknowledgment, and queries through October 3. Scolari Decl. ¶¶ 16-18. She does not say who created the account, who clicked, who used it, or in what capacity. *Id.* Those account-level events, without identifying the user or the capacity in which that user acted, do not establish an agreement by each individual Plaintiff.[2]

For other subscribers, SpaceXAI offers only general descriptions of the same sign-up screen and the same prompt, Scolari Decl. ¶¶ 7, 10-11, which fail *Berman*'s test for the reasons

[2] Nor does Paragraph 28 of the Complaint fill the gap. SpaceXAI calls it a judicial admission of notice, Mot. 1-2, 11, but it alleges only that SpaceXAI "provides Grok to individual consumers under its Consumer Terms of Service." Compl. ¶ 28. That describes SpaceXAI's business; it says nothing about whether any Plaintiff received notice of, or assented to, any version of those terms. A judicial admission withdraws from issue only the fact actually admitted. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

just given. At a minimum, for vast numbers of subscribers, SpaceXAI cannot establish assent to an enforceable Texas forum-selection clause or arbitration agreement.

## II. SpaceXAI's Request for Severance and Transfer Independently Fails Because It Would Fragment Litigation Regarding a Single Antitrust Conspiracy

Even if SpaceXAI could establish enforceable Texas forum-selection clauses with Buist, Spetsas, and Hunt, it would not follow that the Court must sever their claims and send them to Texas. The Supreme Court has recognized that transfer should be denied even in cases involving a valid forum-selection clause where "public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67 (2013). This is such a case. When a forum selection clause binds some parties to a multi-party case but not others, "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014). Judicial economy "retains a cardinal role." *Id.* at 681.

That principle applies with special force to antitrust conspiracies. In *TFT-LCD*, 2014 WL 1477748, at *2, the court refused to require that a plaintiff's claims against one defendant "be tried separately from its substantially similar claims against the other defendants," because fragmentation would be "needlessly inconvenient and burdensome [and] plainly contrary to the policy of the federal judiciary of promoting the consistent and complete adjudication of disputes." *Id.* (quotation omitted). And in *Pospisil v. ATP Tour, Inc.*, 2026 WL 2958066, at *29-32 & n.33 (S.D.N.Y. Sept. 30, 2026), a putative antitrust class action, the court assumed a valid forum clause and still refused to sever the claims against one defendant, because that defendant would remain in New York defending other plaintiffs' claims about the same conspiracy; coordination would not cure "the risk of inconsistent legal rulings and the burden on the courts of addressing the same complex antitrust issues in multiple places by multiple judges." *Id.* at *31 n.33; *see also Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 964 (W.D. Wis. 2017) ("public interest factors favoring all members of an alleged conspiracy to restrain trade be judged in one lawsuit weigh strongly against severance"). And outside the antitrust context, in *United States for Use and*

*Benefit of Exposed Roof Design, LLC v. Tandem Roofing, LLC*, 2023 WL 7688584, at *9-10 (E.D. La. Nov. 14, 2023), the court applied *Rolls Royce* and refused to sever and transfer claims to the Northern District of Texas under a mandatory forum clause because, even with "common discovery, video depositions, and stipulations," "there would be two duplicate cases that require more judicial resources than a single case."

SpaceXAI's requested severance and transfer would fragment the litigation while leaving every Plaintiff and every Defendant with claims still pending before this Court. Buist's, Spetsas's, and Hunt's claims against Anthropic, OpenAI, and Google would all remain here; SpaceXAI seeks to transfer only their claims against itself. At the same time, SpaceXAI would remain here defending Bullock's claim and her request for class relief. Dkt. 35-7. Thus, even if SpaceXAI established enforceable forum-selection clauses against Buist, Spetsas, and Hunt, those Plaintiffs would have to litigate the same alleged conspiracy in this Court against three participants and in Texas against the fourth, while SpaceXAI itself defended that conspiracy in both courts.

This putative class action challenges a single alleged conspiracy affecting purchasers across the market. The proposed class includes direct purchasers of Claude, ChatGPT, and Gemini, not only purchasers bound by an enforceable forum-selection clause covering these claims. Compl. ¶¶ 123-24. Bullock already asserts a conspiracy claim against SpaceXAI, and SpaceXAI identifies no agreement requiring her to litigate elsewhere. She also seeks to represent similarly situated purchasers. *Id.* ¶ 123; *id.* at 28 (Prayer A). SpaceXAI's proposed order would leave her claim and her request for class relief before this Court while sending selected claims arising from the same alleged conspiracy to Texas. Dkt. 35-7 ¶ 2. That duplication does not depend on the ultimate scope of class certification: the proposed order itself requires SpaceXAI to defend the same alleged conspiracy in two courts. *See Pospisil*, 2026 WL 2958066, at *29-32; *TFT-LCD*, 2014 WL 1477748, at *2.

Both courts would decide the same questions: what the companies proposed, communicated, accepted, and implemented, and SpaceXAI's participation in it, Compl. ¶¶ 71-94, 137-139; whether the agreement is unlawful per se or under the rule of reason, *id.* ¶¶ 140-142; its effects on

investment, release schedules, product capabilities, and quality-adjusted subscription prices, *id.* ¶¶ 105-110, 115-119; whether it injured subscribers, on common proof, *id.* ¶ 118; and how to stop the same ongoing restraint, *id.* ¶¶ 146-150. Separate proceedings risk not only a race to judgment, but inconsistent findings and inconsistent remedies. As the Complaint pleads, "concentrating the litigation in one proceeding promotes efficiency, avoids inconsistent adjudications, and serves the private-enforcement purposes of the antitrust laws." *Id.* ¶ 133.

SpaceXAI's contrary arguments for severance and transfer are unpersuasive. None of the X and xAI decisions SpaceXAI collects, Mot. 22, involved an alleged conspiracy among independent competitors, and none left the moving defendant defending the same claims in the original court. SpaceXAI's principal antitrust case, *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 935 (D. Minn. 2014), transferred all claims against each moving defendant precisely to avoid leaving that defendant litigating in both districts. SpaceXAI's proposed order creates the very duplication *Valspar* avoided. And *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 435 (E.D.N.Y. 2014), found only a "marginal impact on judicial economy" because the claims against the remaining defendants were already going to arbitration. Here they are not.

SpaceXAI's remaining public-interest arguments fare no better. It says the Northern District of Texas has fewer pending actions per judgeship. Mot. 21. A caseload comparison does not measure the added work of litigating the same conspiracy twice, and transfer would not relieve this Court of any common issue. SpaceXAI also says this controversy is "not localized in any way to California." *Id.* But the Complaint alleges that the agreement "was proposed, accepted, and implemented in substantial part by executives and personnel working in and from this District." Compl. ¶ 40. Anthropic and OpenAI have their principal places of business in San Francisco, and Google has its principal place of business in Mountain View. *Id.* ¶¶ 22, 25, 31. Bullock and Hunt are California residents who allege continuing injury. *Id.* ¶¶ 17-18, 21. The public interest overwhelmingly favors adjudicating this conspiracy here, in one action.

### III. SpaceXAI's Request to Compel Arbitration Independently Fails Because the Arbitration Provisions Eliminate Plaintiffs' Statutory Right to Injunctive Relief

SpaceXAI's argument in favor of arbitration should be rejected. *First,* for the reasons discussed above, SpaceXAI cannot establish that any plaintiff validly assented to its arbitration clause (or that it even has such an agreement with Bullock or Hunt). Second, the arbitration agreement is unenforceable to the extent it purports to bar the award of "injunctive relief." Scolari Decl. Exs. A-B § 14, at 5; *id.* Ex. E § 6, at 12. A party may not use an arbitration clause to prevent the assertion of important express statutory rights. *Platt v. Sodexo, S.A.*, 148 F.4th 709, 721 (9th Cir. 2025); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013). Section 16 of the Clayton Act entitles Plaintiffs to seek an injunction, 15 U.S.C. § 26, and Count II seeks one, Compl. ¶¶ 146-152.

The Court should reject the arbitration provisions rather than enforce a procedure that extinguishes Count II's remedy. *Graham Oil* rejected an entire arbitration clause whose integrated restrictions stripped statutory protections. 43 F.3d at 1248-49. SpaceXAI's terms preserve legally required exceptions to confidentiality but make the injunction ban absolute. Scolari Decl. Exs. A-B § 14, at 5; *id.* Ex. E § 6, at 12. At a minimum, the Court must resolve severability before compelling arbitration and preserve the full statutory remedy. *Platt*, 148 F.4th at 722-23. Any alternative order must also preserve statutory costs and attorney's fees without X's condition requiring frivolousness or bad faith. 15 U.S.C. § 26; Scolari Decl. Ex. E § 6, at 12.

## CONCLUSION

The Court should deny SpaceXAI's motion in full. Alternatively, if the Court compels arbitration of any Plaintiff's claims, it should first invalidate the injunction ban and preserve all statutory remedies, and it should stay rather than dismiss the claims it sends to arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). All other claims should proceed in this Court.

Dated: October 27, 2026

Respectfully submitted,

/s/ Andrew T. Tutt
Nicholas C. Rowley (SBN 220036)
Lead Counsel
**TRIAL LAWYERS FOR JUSTICE**
8235 Santa Monica Blvd.
West Hollywood, CA 90046
Tel.: (310) 855-3727
Fax: (310) 855-3595
ncr@tl4j.com

Andrew T. Tutt (SBN 343206)
R. Stanton Jones (DC Bar No. 987088)
**TRIAL LAWYERS FOR JUSTICE**
421 W. Water Street
Decorah, IA 52101
Tel.: (919) 699-5905 (Tutt)
Tel.: (202) 550-3260 (Jones)
Fax: (563) 204-4205 (Tutt)
andrew@tl4j.com
stanton@tl4j.com

Jakob Z. Norman (WY Bar No. 6-3685)
**TRIAL LAWYERS FOR JUSTICE**
724 S. Durbin Street
Casper, WY 82601
Tel.: (307) 288-4400 ext. 101
jakob@tl4j.com

*Attorneys for Plaintiffs and the Proposed Class*