Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
Mayra de Aguiar (Bar No. 212709)
mdeaguiar@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Kenton Skarin (*pro hac vice*)
kskarin@x.ai
Reid Coleman (application for admission *pro hac vice* pending)
rcoleman@x.ai
SPACEXAI LLC
800 W. Cesar Chavez
Austin, TX 78701

*Attorneys for Defendant SpaceXAI LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES BUIST, CHEYENNE HUNT, CHRISTINE BULLOCK, and NICK SPETSAS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ANTHROPIC, PBC; OPENAI OPCO, LLC; SPACEXAI LLC; and GOOGLE LLC,

Defendants.

Case No.: 5:26-cv-10693-NC

**DEFENDANT SPACEXAI LLC'S REPLY IN SUPPORT OF MOTION TO SEVER AND TRANSFER TO THE NORTHERN DISTRICT OF TEXAS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

Date: November 18, 2026
Time: 11:00 a.m.
Judge: Hon. Nathanael Cousins

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 2

A. Plaintiffs had actual notice of the terms of service. ........................................ 2

B. Plaintiffs had constructive notice of the terms of service and manifested assent to those terms. ........................................ 4

1. Buist and Spetsas agreed to the SpaceXAI Terms of Service when they created their joint Grok account. ........................................ 4

2. Buist and Spetsas agreed to the SpaceXAI Terms of Service when they responded to in-app prompts notifying them of updates to the terms. ........................................ 8

3. Hunt agreed to the updated X Terms of Service. ........................................ 10

C. Plaintiffs fail to show that exceptional circumstances justify disregarding the parties' chosen forum. ........................................ 12

D. Alternatively, the Court should compel arbitration. ........................................ 13

III. CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 14

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) .......... 2

*Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*,
275 F. Supp. 3d 957 (W.D. Wis. 2017) .......... 13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 14

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) .......... 1, 12, 13, 15

*Chabolla v. ClassPass, Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 5, 6

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 14

*Eliza Labs, Inc. v. X Corp.*,
2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) .......... 10

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 3

*Graham Oil Co. v. ARCO Prods. Co.*,
43 F.3d 1244 (9th Cir. 1994) .......... 14

*Hakopian v. Mukasey*,
551 F.3d 843 (9th Cir. 2008) .......... 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) .......... 13

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 5

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 4, 5

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) .......... 7

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) .......... 5

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 2

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 4

*Paduano v. Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) ........ 13

*Penning v. NVIDIA Corp.*,
2026 WL 1433313 (N.D. Cal. May 21, 2026) ........ 2

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ........ 5

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ........ 5

*Platt v. Sodexo, S.A.*,
148 F.4th 709 (9th Cir. 2025) ........ 14

*Pospisil v. ATP Tour, Inc.*,
2026 WL 2958066 (S.D.N.Y. Sept. 30, 2026) ........ 13

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ........ 14

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ........ 2

*Rose v. SpaceXAI LLC*,
2026 WL 3169664 (N.D. Cal. Oct. 22, 2026) ........ 5

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) ........ 3

*Skaggs v. X.AI, LLC*,
2026 WL 2352969 (N.D. Cal. Aug. 13, 2026) ........ 5

*St. Clair v. X.AI Holdings Corp.*,
2026 WL 1803744 (S.D.N.Y. June 23, 2026) ........ 10

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ........ 11

*Sw. Airlines Co. v. Boardfirst, L.L.C.*,
2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ........ 2

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ........ 2

*Valspar Corp. v. E.I. DuPont De Nemours & Co.*,
15 F. Supp. 3d 928 (D. Minn. 2014) ........ 13

*Ward v. TheLadders.com, Inc.*,
3 F. Supp. 3d 151 (S.D.N.Y. 2014) ........ 3

**Statutes**

15 U.S.C. § 26 ........................................................................................................................ 14

28 U.S.C. § 1404(a) ............................................................................................................ 1, 15

**Rules**

Fed. R. Civ. P. 21 ................................................................................................................ 1, 15

## I. INTRODUCTION

SpaceXAI LLC explained in its motion that three licensed attorneys—Charles Buist, Nick Spetsas, and Cheyenne Hunt—affirmatively agreed to litigate any disputes with SpaceXAI concerning their use of Grok exclusively in Texas. Under 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 21, the court should sever and transfer Plaintiffs' claims to effectuate that agreement.

Plaintiffs had actual notice of the applicable terms of service, including their forum-selection clauses. In their Complaint, Plaintiffs admit they knew that SpaceXAI provided its services subject to its terms of service. Buist and Spetsas affirmatively assented to those terms just days before suing in the wrong jurisdiction. Likewise, Hunt used her subscription many hundreds of times in the days preceding filing while simultaneously accepting the updated X Terms of Service with an account linked to her personal account. And even after the filing of the motion to transfer put Plaintiffs on explicit notice, all three have continued using Grok and X.

Plaintiffs also had constructive notice of the terms and manifested their assent to them. In the modern digital age, it is reasonable to expect individuals—and particularly, attorneys—to know that their ongoing use of a consumer product is subject to such terms. Here, there is no dispute that Plaintiffs received *actual* notice due to their pleadings, clicked through multiple "Got it" assents notifying them of updates to the terms, and continued using SpaceXAI's products. The legal standard for enforcing terms of service requires only reasonably conspicuous notice and assent. Any notion that Plaintiffs in these circumstances lacked that notice and assent is absurd.

Plaintiffs' contention that the Terms' valid forum-selection clauses should not be enforced fails. They have not shown any "exceptional circumstances" that justify disregarding Plaintiffs' valid agreements under *Atlantic Marine*.

Finally, if this court enforces the Texas forum-selection clause, as it should, there is no need to address Plaintiffs' separate agreement to arbitrate their claims. But if the court does not transfer, the arbitration clause must be enforced, either in full or by severing any unenforceable limitation on injunctive relief.

## II. ARGUMENT

### A. Plaintiffs had actual notice of the terms of service.

This dispute can be easily resolved based on the complaint because Plaintiffs pleaded knowledge of the terms of service. Mot. at 11. Courts have consistently enforced online agreements "where the user had actual notice of the agreement." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Another court in this District, for example, enforced a browsewrap agreement where the allegations in the complaint showed that the plaintiff "had actual notice of the Terms of Service containing the arbitration agreement." *Penning v. NVIDIA Corp.*, 2026 WL 1433313, at *7 (N.D. Cal. May 21, 2026); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402 (2d Cir. 2004) (enforcing browsewrap agreement where party "was fully aware of the terms on which [offeror] offered the access" to platform). And other courts have concluded that users were on actual notice after receiving letters concerning the terms and conditions sent on behalf of website operators. *See, e.g.*, *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003); *Sw. Airlines Co. v. Boardfirst, L.L.C.*, 2007 WL 4823761, at *4–*6 (N.D. Tex. Sept. 12, 2007).

Here, as in *Penning*, Plaintiffs' own allegations make clear that they had actual notice of the terms of service governing their usage of Grok. The complaint specifically alleges SpaceXAI "provides Grok to individual consumers under its Consumer Terms of Service." Compl. ¶ 28. That is, Plaintiffs plead awareness of the very contractual terms that they are now trying to avoid. This binding judicial admission resolves the issue of contract formation. *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions."); *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (similar). Recognizing their slip, Plaintiffs try to claim their admission was just "describ[ing] SpaceXAI's business." Dkt. 47 at 11 n.2. But the question of contract formation turns on Plaintiffs' notice of the terms, and their complaint is definitive proof that they *actually* knew their Grok use was subject to terms of service. Plaintiffs therefore pleaded themselves out of this court and into Texas.

Moreover, Plaintiffs have no credible argument that they did not agree to the current

SpaceXAI and X Terms of Service because—after SpaceXAI moved to transfer on October 13, 2026—they have continued to access and use the company's services. SpaceXAI's motion to transfer gave Plaintiffs clear and conspicuous notice of the current SpaceXAI and X Terms of Service. Dkt. 35-1 ("Scolari Decl.") ¶ 6 (hyperlink to the "current version" of the SpaceXAI Consumer Terms of Service); *id.* ¶ 20 (hyperlink to the "current version" of the X Terms of Service); *id.* ¶ 29 & Ex. E. And all relevant versions of those terms make clear that continued use constitutes acceptance. *See* Scolari Decl., Ex. A ("Your continued use of the Service after any change to these Terms constitutes your acceptance of the New Terms of Service. If you do not agree to any part of these Terms or to any future Terms of Service, do not access or use (or continue to access or use) the Service."); *id.* Ex. E ("By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.").

Notwithstanding this clear notice, Plaintiffs Hunt, Buist, and Spetsas have continued to use X and Grok. Hunt has posted to her @CheyenneHuntCA account dozens of times since SpaceXAI filed the motion to transfer, including as recently as today. Reply Declaration of Megan Scolari (filed concurrently) ¶ 8. Buist and Spetsas accessed their shared Grok account as recently as October 30, 2026. *Id.* ¶ 6. Plaintiffs have thus undeniably manifested their assent to be bound by the current SpaceXAI and X Terms of Service. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 932–35 (N.D. Cal. 2024) (plaintiff assented to website's terms of use when he was sent an email regarding updated terms and continued to use the website); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *13 (N.D. Cal. July 31, 2023) (plaintiff "unambiguously manifested assent to the terms of the agreement by continuing to use the streaming service after he received the emails" with updated terms); *see also Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 158–59 (S.D.N.Y. 2014) (user bound by updated terms of service when original contract explicitly allowed for subsequent modifications and user continued to use the website after the updated terms went into effect). Plaintiffs cannot continue to use X and Grok while claiming to be ignorant of the forum-selection clauses in the terms of service. The Court should accordingly

hold Plaintiffs to their agreements and grant the motion to transfer.[1]

**B. Plaintiffs had constructive notice of the terms of service and manifested assent to those terms.**

Even if Plaintiffs did not have actual notice, the relevant terms of service are still enforceable because Plaintiffs had constructive notice of and manifested assent to those terms. A valid and binding contract exists "where (1) the website provides reasonably conspicuous notice of the terms . . . and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (citation omitted). Plaintiffs here received reasonably conspicuous notice of the terms of service and assented to those terms both when they created their accounts and when they received pop-up prompts notifying them of updates. Mot. at 12–18. Plaintiffs' contrary arguments fall flat.

*1. Buist and Spetsas agreed to the SpaceXAI Terms of Service when they created their joint Grok account.*

Quibbling with the design of SpaceXAI's sign-up page, Plaintiffs argue that Buist and Spetsas did not receive reasonably conspicuous notice of the terms of service when they created their joint account. Opp. at 8–9. But the iOS sign-up screen displayed a prominent banner, positioned immediately below the sign-up buttons and visible without any scrolling, stating: "By continuing you agree to the Terms of Service and Privacy Policy." Scolari Decl. ¶ 7. The text of that message was set in contrasting text with bold hyperlinks for "Terms of Service" and "Privacy Policy." *Id.* And, as SpaceXAI explained in its motion (at 17), courts have consistently enforced policies with comparable designs. *See, e.g.*, *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020–21 (9th Cir. 2024) (enforcing terms of use where notice appeared below action

[1] Plaintiffs also contend that SpaceXAI has not shown that there is any binding agreement between the company and Plaintiff Christine Bullock. Opp. at 5–7. SpaceXAI is still investigating whether Bullock has assented to either the SpaceXAI or X Terms of Service. SpaceXAI will move to transfer any claims that she may assert against the company if she is a Grok or X user. At any rate, SpaceXAI's forthcoming motion to dismiss will demonstrate why Plaintiffs—including Bullock—fails to state a claim.

button and used "contrasting white font" hyperlinks with white borders on dark background); *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) (finding sufficient notice where webpage "was uncluttered, with only a few entry fields followed by the disclosure on a single page; the text placed hyperlinks in a different color to indicate their selectability; and there were no additional features . . . that would have obscured the notice"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586–87 (N.D. Cal. 2020) (concluding that terms of use were enforceable where notice is "uncluttered and wholly visible," notice text appears close "to the sign-up button," and "text contrasts clearly with the background and is plainly readable"). Tellingly, Plaintiffs do not even attempt to distinguish those cases.

Plaintiffs take issue with what they call the "nearly invisible (dark grey on black)" text notifying users about the terms of service. Opp. at 9. But as in *Keebaugh*, the SpaceXAI sign-up flow uses "'a contrasting font color'" that makes the notice regarding the terms of service "legible on the dark background." 100 F.4th at 1020 (citation omitted). And, importantly, courts have consistently held that notices using a similar degree of color contrast provided users with reasonably conspicuous notice. *See, e.g.*, *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070, 1073–74 (C.D. Cal. 2023) (rejecting argument that notice was inconspicuous because it appeared in "small, transparent gray font"); *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (approving of gray font on a white background where "the general design of the webpage, which is comprised of only two data fields," was "uncluttered" and had a "muted" color scheme); *Peter*, 445 F. Supp. 3d at 586 (rejecting argument that "gray-on-gray" font was inconspicuous). Here, too, the notice's contrasting color made the text conspicuously clear and legible.

Invoking *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147 (9th Cir. 2025), Plaintiffs also suggest that the notice did not provide adequate notice because it appeared under the sign-up buttons. Opp. at 9.[2] But *Chabolla* turned on unique facts not presented here. That case involved

---

[2] Plaintiffs also rely on the decisions in *Skaggs v. X.AI, LLC*, 2026 WL 2352969 (N.D. Cal. Aug. 13, 2026), and *Rose v. SpaceXAI LLC*, 2026 WL 3169664 (N.D. Cal. Oct. 22, 2026). Respectfully, those decisions are not persuasive because they misread the Ninth Circuit's

individuals who signed up for health memberships with "a company offering packaged-deal access to gyms." 129 F.4th at 1151. The Court first held that the context of the transaction did not support notice because it "could easily be considered a one-time purchase of credits at a discounted rate to be traded in at gyms and studios, rather than the formation of an ongoing relationship." *Id.* at 1155. Turning to the notice's visual aspects, the Court explained that the screen was so "crowded" that the "notice seems to fade into the irrelevancy of other aspects of the page." *Id.* at 1157. Here, by contrast, the context of the transaction clearly contemplated an ongoing relationship (which Plaintiffs do not dispute) and the screen was far less crowded. A simple visual comparison confirms as much:

**<u>SpaceXAI Sign-Up Screen</u>:**




---

decision *Chabolla* for the reasons explained above. In any event, unlike Plaintiffs here, the users in those cases did not separately assent to the terms of service in response to non-dismissible, in-app prompt regarding updates to the terms. *See infra* § B.2.

**<u>ClassPass Checkout Screen</u>:**




What is more, other courts in this District have concluded that nearly identical sign-up screens provided reasonably conspicuous notice. The court in *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091 (N.D. Cal. May 27, 2025), for example, enforced a platform's terms and conditions where the sign-up screen contained "four simple boxes where users can choose how to set up an account, separated by significant white space surrounding the . . . notice." *Id.* at *4. Concluding that the sign-up flow provided adequate notice, the court underscored that the page was "free from clutter" and that the hyperlinks were not "buried in text or otherwise placed in a confusing location." *Id.* Indeed, the notice at issue in *Kroskey* (depicted below) is essentially indistinguishable from SpaceXAI's sign-up screen. And like the notice in *Kroskey*, SpaceXAI's sign-up screen provides users with reasonably conspicuous notice.

***Kroskey* Sign-Up Screen**:




2. *Buist and Spetsas agreed to the SpaceXAI Terms of Service when they responded to in-app prompts notifying them of updates to the terms.*

Plaintiffs next argue that SpaceXAI's repeated notifications to users regarding updates to its terms of service—through non-dismissible, in-app prompts—were insufficient to provide notice that Buist and Spetsas were bound by the terms. Opp. at 10–11. Not so.

When SpaceXAI changed its terms of service in June and September of 2026, it sent an in-app prompt to all users notifying them of those changes. Scolari Decl. ¶ 10. The prompt notified users—in large, bolded, and contrasting text—about "Updates to our Terms of Service and Acceptable Use Policy." *Id.* And immediately below that message, there were bolded hyperlinks to the full text of the updated "Terms of Service" and "Acceptable Use Policy,"

together with the statement that the update was "a great chance to review them." The prompt could not be dismissed without clicking "Got it." *Id.* ¶¶ 10–11. The whole prompt appeared as follows:




SpaceXAI's records show that Buist and Spetsas received an identical prompt and clicked "Got it" on September 11, 2026—just seven days before they filed this suit. *Id.* ¶ 18. This prompt provided reasonably conspicuous notice of the terms, and Buist and Spetsas manifested assent to the updated terms by clicking "Got it."

Plaintiffs do not dispute that the in-app prompt provided reasonably conspicuous notice of the SpaceXAI Terms of Service. They instead argue that clicking the "Got it" button was not enough to manifest assent to the terms. Opp. at 10–11. But that argument defies common sense. Any reasonable user would have interpreted the "Got it" prompt to be asking users to assent to the updated terms. Indeed, the prompt notifies users about "Updates to our Terms of Service and Acceptable Use Policy" and recommends that users "review" those updates. And users were given the choice to "sign out" or click "Got it" to begin using Grok. This context is more than enough to have put users on notice that clicking "Got it" would be understood as signaling assent to the updated terms. And, unsurprisingly, courts have held that clicking "Got it" in response to

X and SpaceXAI's in-app prompts was enough to manifest assent. *See, e.g.*, *St. Clair v. X.AI Holdings Corp.*, 2026 WL 1803744, at *3 (S.D.N.Y. June 23, 2026) ("Plaintiff clicked the 'Got it' button acknowledging the revisions" and therefore "manifested her assent to be bound by" the updated terms); *Eliza Labs, Inc. v. X Corp.*, 2025 WL 3003766, at *4 (N.D. Cal. Oct. 27, 2025) (concluding "there can be no serious question as to whether Plaintiffs voluntarily assented" to the terms in part because they "received and acknowledged in-app prompts" notifying them of updates). In any event, continued use of the service after receiving notice regarding the updated terms of service is enough to show assent. *Id*. Plaintiffs Buist and Spetsas therefore had notice of, and expressly assented to, the SpaceXAI Terms of Service, and they should therefore be bound by the forum-selection clause in that agreement.[3]

*3. Hunt agreed to the updated X Terms of Service.*

Plaintiffs do not dispute that Hunt agreed to the X Terms of Service when she created her account in 2020. Opp. at 7. They instead argue that she never agreed to a version of the terms that contained a Texas forum-selection clause or an arbitration agreement. Opp. at 7–8. But she expressly assented to the latest terms of service when she clicked "Got it" in response to a non-dismissible, in-app prompt that appeared in one of her accounts. Mot. at 16 (citing Scolari Decl. ¶ 34). And, in any event, she agreed to the latest terms by continuing to use the X platform after receiving notice of the updated terms. Mot. at 17; *supra* at 3.

Hunt agreed to Version 23 of the X Terms of Service—a version that includes a Texas forum-selection clause. Hunt has two linked X accounts, one with the handle @CheyenneHuntCA and another with the handle @reckoningaction. Scolari Decl. ¶ 33. X's records show that when she logged in to her @reckoningaction account on September 11, 2026, she received an in-app prompt notifying her of changes to the terms of service, and that she

[3] Plaintiff's argument that SpaceXAI did not show that Plaintiffs Buist and Spetsas "received proper notice of the revised terms and then manifested assent" (Opp. at 11) fails. Those Plaintiffs do not dispute that "they have an X account for their firm with the handle @SpetsasBuist." Scolari Decl. ¶ 16. Nor do they contend they have different Grok accounts other than the account SpaceXAI identified. Opp. at 11. Having conceded that the @SpetsasBuist account is in fact theirs, they cannot now evade their assent to the SpaceXAI Terms of Service.

manifested her assent to those updates by clicking the "Got it" button in the prompt. *Id.* ¶ 34. In short, Hunt had notice of and assented to a version of the X Terms of Service with the forum-selection clause.

Unable to identify any meaningful deficiency in X's notice-and-assent mechanisms, Plaintiffs shift to a different argument altogether. They contend that Hunt did not agree to litigate her personal claims against SpaceXAI in Texas when she agreed to the latest X Terms of Service with her @reckoningaction account. Opp. at 7. But contrary to Plaintiffs' suggestion, the X Terms of Service make clear that they bind both the entity and the individual who operates the account. Scolari Decl., Ex. E at 4 ("The words 'you' and 'your' as used in these Terms shall refer either to the person accepting these Terms . . . and/or the entity"). And Hunt does not dispute that she controls the @reckoningaction account, that she clicked the "Got it" button, or that the latest X Terms of Service cover the claims she asserts here.

Moreover, even if the in-app prompt on Hunt's @reckoningaction account did not show that she agreed to the updated terms, the prompt gave her notice about the updated terms and that, combined with her continued use of X, establishes assent. Again, Hunt does not dispute that she agreed to the X Terms of Service when she created an account. Nor does she dispute that the terms in place at the time she created her account expressly advised users that X could revise those terms, that the revised terms would become effective upon notice, and that continued use after the revisions became effective would constitute acceptance. This is therefore a question about modifying an existing contractual relationship rather than initial contract formation. Under *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020), the inquiry for modification is simply whether the offeror provided adequate "notice that the terms have changed and an opportunity to review the changes." *Id.* at 1088. Here, it is clear—in fact, undisputed—that X provided notice about the revisions and gave Hunt an opportunity to review the changes. The in-app prompt that she received stated: "We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them." Scolari Decl. ¶ 27. That is enough to establish assent to the forum-selection clause under *Stover*, particularly because Hunt has continued to use her account. *See supra* at 3 (citing cases holding that notice and continued use are enough to

establish assent). Hunt is therefore bound by Version 23 of the X Terms of Service and was contractually required to bring her claims against SpaceXAI in Texas.

**C. Plaintiffs fail to show that exceptional circumstances justify disregarding the parties' chosen forum.**

Plaintiffs contend that, even if the terms of service are valid, the Court should nevertheless decline to enforce them because this case involves an alleged antitrust conspiracy. Opp. at 12–14. Accepting this position would create a rule fundamentally at odds with *Atlantic Marine*. There, the Supreme Court held that once a valid forum-selection clause exists, it "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013); *see also id.* at 64 (explaining that because the public-interest "factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases"). That this case involves antitrust claims and multiple defendants does not create a categorical exception to that rule. Nothing about the nature of claims asserted or the parties involved in litigation alters SpaceXAI's contractual rights. Nor do those factors diminish the federal policy favoring enforcement of a valid forum-selection clause. Were it otherwise, a forum-selection clause would become effectively unenforceable simply by a plaintiff choosing to pursue coordinated litigation against multiple defendants.

Plaintiffs rely primarily on judicial economy and the supposed efficiency in having their claims against all defendants tried in a single forum. Opp. at 12–14. But that is not a possible outcome. The SpaceXAI Terms that Buist and Spetsas agreed to and the X Terms that Hunt accepted both provide: "If, for any reason, the forum selection clause . . . is deemed unenforceable as to your dispute, then you and we agree to binding arbitration of the dispute." Scolari Decl. ¶¶ 12, 28. OpenAI may also move to compel arbitration of the claims asserted against it because its consumer terms of use likewise include an arbitration provision. *See* https://openai.com/policies/row-terms-of-use/ (last visited Nov. 3, 2026). Plaintiffs' judicial economy argument thus rests on the mistaken assumption that all their claims will be heard in one forum.

And efficiency cannot overcome the forum-selection clause anyway. As one court aptly recognized, "the efficiency and economy that could be achieved by a single trial would largely inure" to the benefit of the *plaintiff* who has filed suit in violation of its contractual obligations. *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 435 (E.D.N.Y. 2014). Plaintiffs' judicial economy argument is really just a way to repackage their own private interests in having claims resolved in a single forum—interests that *Atlantic Marine* says should not be considered where there is a valid forum-selection clause. *See Atl. Marine*, 571 U.S. at 64. Their invocation of the public interest thus rings hollow.

Moreover, it "is always more expeditious to try related claims in one forum rather than several, but allowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine*'s holding in every case with multiple defendants." *Valspar Corp. v. E.I. DuPont De Nemours & Co.*, 15 F. Supp. 3d 928, 934–35 (D. Minn. 2014). Plaintiffs have not offered any particular reason why their claims against SpaceXAI must be kept in California along with the claims they assert against the other defendants—in violation of the contracts Buist, Spetsas, and Hunt agreed to. The cases that Plaintiffs cite had additional extenuating circumstances that do not exist here. *See, e.g.*, *Pospisil v. ATP Tour, Inc.*, 2026 WL 2958066, at *32 (S.D.N.Y. Sept. 30, 2026) ("all Defendants and all claims have survived the motion-to-dismiss stage"); *Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 966 (W.D. Wis. 2017) (party raising forum-selection clause had "long-standing relationship" litigating similar antitrust claims with same group of defendants in nearby forum); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 1477748, at *2 (N.D. Cal. Apr. 14, 2014) (transfer would splinter federal from state law claims against moving defendant). Plaintiffs should not be rewarded for violating their contractual obligations.

**D. Alternatively, the Court should compel arbitration.**

Finally, there is no need to address the fallback arbitration provision at all if this court enforces the terms of the parties' agreement and transfers this case. The SpaceXAI Terms that Buist and Spetsas agreed to and the X Terms that Hunt accepted provide for exclusive litigation in Texas, and state that arbitration applies only "if, for any reason, the forum selection clause is

deemed unenforceable." Scolari Decl. ¶¶ 12, 28. Enforcement of the forum clause therefore ends the inquiry. Plaintiffs can raise every claim they have asserted—including their request for injunctive relief under Clayton Act § 16, 15 U.S.C. § 26—in the contractually designated forum. No statutory remedy is extinguished, the fallback arbitration provision is never triggered, and the Court need not address its scope or severability.

However, if the court declines to do so, the arbitration provision must be enforced. In recent decades, the Supreme Court has made clear that arbitration "is a matter of contract" and that "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citing and quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Plaintiffs' primary case, *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244 (9th Cir. 1994), was decided in 1994, at the height of judicial hostility to arbitration later cabined by cases like *Italian Colors* and *Concepcion*. It is also distinguishable. *Graham Oil* involved an arbitration clause that expressly required a franchisee to surrender multiple specific statutory rights under the Petroleum Marketing Practices Act (including exemplary damages, attorney's fees, and statute of limitations). *Graham Oil*, 43 F.3d at 1247–48.

Here, the clause retains full avenues for relief, and while it generally prohibits arbitral injunctive relief, it does not expressly waive Clayton Act § 16. The terms also contain a severability clause. *See* Dkt. 35-2 ¶ 15 ("If any provision of these Terms is deemed invalid by a court of competent jurisdiction, the invalidity of such provision will not affect the validity of the remaining provisions of these Terms, which will remain in full force and effect."). Even if the general prohibition on the arbitrator granting "injunctive relief" were found to limit a statutory remedy, the ordinary modern response is to sever the unenforceable limitation rather than invalidate the entire arbitration agreement. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272–73 (9th Cir. 2017); *Platt v. Sodexo, S.A.*, 148 F.4th 709, 722–23 (9th Cir. 2025). Severance preserves the statutory right to injunctive relief under § 16 while enforcing the remainder of the agreement.

## III. CONCLUSION

This Court should "protect[] [the parties'] legitimate expectations and further[] vital interests of the justice system," *Atl. Marine*, 571 U.S. at 63, by enforcing the terms of service, severing Plaintiffs' claims against SpaceXAI and transferring those claims to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 21. In the alternative, this Court should enforce the arbitration provision.

Respectfully submitted,

Dated: November 3, 2026

WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
Mayra de Aguiar

SPACEXAI LLC
Kenton Skarin (*pro hac vice*)
Reid Coleman (application for admission *pro hac vice* pending)

*Attorneys for Defendant SpaceXAI LLC*